[Civ. No. 15028.   First Dist., Div. One.   May 16, 1952.]

HELEN K. BRUMMUND, Respondent, v. CITY OF OAKLAND et al., Appellants.

John W. Collier and George M. Cahalan for Appellants.

St. Sure & Moore for Respondent.

BRAY, J.—This appeal from a judgment granting petitioner a writ of mandate requiring the appellants to pay her a refund of certain moneys deducted from her late husband's salary as a fireman of the city of Oakland and contributed to the firemen's relief fund, raises the question of the proper interpretation of section 104 (2) of the Oakland city charter as amended in 1943.

### FACTS

There is no dispute as to the facts. Petitioner is the widow of Henry M. Brummund, who was a member of the fire department of the city of Oakland from January 1, 1920, continuously to the date of his death January 30, 1950. He died from nonservice-connected causes. During the whole of his more than 30 years' service payments were deducted from his pay and made in his behalf into the firemen's relief and pension fund pursuant to the charter provisions hereafter set forth. After his death, petitioner, as his widow, filed a claim with the board of trustees of that fund, asking a refund of all sums deducted from her husband's pay and contributed to the fund, from January 1, 1920, to January 30, 1950, plus simple interest at a rate fixed by the board. The board granted and paid petitioner a refund of all deductions from and after May 4, 1943, plus interest, but denied the refund of any sums deducted prior to that date. Petitioner brought this proceeding to recover those sums. The court found that she was entitled to a refund of *all* moneys paid into the fund from deductions in her husband's pay, and ordered the board to pay her, with simple interest to be determined by the board, the

unpaid sums, namely those deducted from his pay between January 1, 1920 and May 4, 1943.

STATUTES

When petitioner's husband first was employed, section 97 of the Oakland city charter (Stats. 1911, p. 1551) provided that members of the fire department should "receive annual compensations, comprising their salaries, and an allowance of two (2) dollars per month for the firemen's relief and pension fund . . ." Section 104 (9), Stats. 1911, page 1615, provided that the treasurer should retain from the compensation of each member $2.00 per month and pay it into the fund. Section 97 was amended by Stats. 1919, page 1367, to read (so far as here involved) "There shall be allowed to each member of the Fire Department, in addition to their salaries, the sum of two dollars per month for the" fund. Again, by Stats. 1933, page 3189, section 97 was amended to provide that there be deducted from each monthly installment of salary, a sum equal to 5 per cent of such installment, which sum should be retained by the treasurer and paid into the fund. "The city shall contribute the balance necessary to maintain said fund . . ."

In 1943 (Stats. 1943, p. 3325) section 97 was amended in several respects not important here and broken down into subsections. As amended it provided for a 15 per cent increase in salaries. The above-mentioned portion of section 97 which provided for the 5 per cent deduction from salaries to be paid into the fund was renumbered section 97b and reenacted in almost identical language.

Section 104 (2), which is the section to be construed here, as it existed in 1920 when petitioner's husband first joined the fire department, provided that when a member, after ten years of service, died from nonservice-connected causes, his widow would be entitled to the sum of $1,000. In 1943, (Stats. 1943, p. 3327; and in effect at the date of death) section 104 (2) was amended to read: "When a member of the Department shall die from [nonservice-connected] causes . . . after ten years of service, then his widow . . . shall be entitled to the sum of One Thousand (1,000) Dollars; provided, further, when a member . . . shall die from [nonservice-connected] causes . . . before retirement or eligibility for retirement, regardless of length of service, then his widow . . . shall have and receive *a refund of all such sums as have been deducted from his pay and contributed to the Firemen's Relief and Pension Fund, plus simple interest at a rate fixed by the Board of Trustees.* When a member of the Department dies

at such time as to qualify under both provisions of this subdivision, the person or representatives entitled to receive the payment or refund herein provided *shall elect whether the One Thousand (1,000) Dollar payment or the refund of salary deductions shall be received,* but in no event shall both be paid on account of the same death."*

As the section states that in the event of the death of a member under the circumstances therein set forth, his widow shall elect whether to receive $1,000 or the "refund of *all* such sums as have been deducted from his pay and contributed to" the fund, it is obvious that this would include the sums paid before the amendment as well as after, unless there is some legal reason why the section cannot be made retroactive in that sense. Appellants contend that the amendment operates only prospectively, that the deductions from pay paid into the fund were not contributions but public moneys, and that to give the amendment a retroactive effect would be making a gift of public moneys and therefore illegal.

### Does Retrospective Application of the Amendment Constitute a Gift of Public Moneys?

Appellants rely principally upon *Goodwin* v. *Board of Trustees,* 72 Cal.App.2d 445 [164 P.2d 512]. There was involved section 101½ of the charter which was added in 1943 at the same time section 104 (2) was amended as above set forth. Section 101½ provided that any member who resigned or was discharged prior to retirement would have refunded all sums which "pursuant to the provisions of Section 97b" were deducted from his pay and contributed to the fund. Prior to the enactment of that section there was no provision for the refund of any moneys to a fireman resigning or being discharged. The court in interpreting section 101½ held that it acted only prospectively and did not entitle Goodwin, who had been a member of the fire department since 1933 and who resigned May 31, 1943, to the refund of any sums deducted from his pay prior to the effective date of that section, May 4, 1943. The decision was on two grounds: (1) that, as section 101½ provided resigning members refunds of sums deducted from their salaries under the provisions of section 97b and as there was no section 97b prior to the carving of 97b out of section 97 in 1943, at the same time as the enactment of section 101½, it was obvious that the Legislature intended that the refunds could be only of deductions thereafter

---

*Unless otherwise noted, all italics added.

made. Secondly, the court held that no *right* in a member to a refund of any kind, nor any obligation on the part of the city to make such refund, when the deductions were paid into the retirement fund, had been provided for resigning members prior to the enactment of section 101½, and that the moneys paid into the fund, because of no provisions for refund, were not trust moneys belonging to the firemen, but public moneys of the city. It then said (p. 452): "If no obligation existed between 1933-1943 to make such refunds, and it has already been so held, it is too clear to require further comment that for the city to assume an obligation to pay for services after they are rendered when no obligation existed at the time of rendition, would be to violate the provision of the Constitution prohibiting gifts of public funds." But the Goodwin case is clearly distinguishable from ours. As to the first ground of the decision, the right to refund relied on there and given by the new section was expressly limited to moneys which under the newly enacted section 97b were deducted from the firemen's pay. In our case the refunds provided by section 104 (2) are in nowise limited to those deducted pursuant to the provisions of any particular section but "of all such sums as have been deducted" from the firemen's pay and contributed to the fund. Thus there is no apparent intention of the Legislature to limit the refunds to sums deducted at any particular time. In determining whether section 104 (2) is to apply only to moneys deducted after its enactment date, the rule set forth in *Cordell* v. *City of Los Angeles,* 67 Cal.App.2d 257, 266 [154 P.2d 31], must be borne in mind: "Neither can we be unmindful of the rule so firmly established in this state that pension legislation must be liberally construed and applied to the end that the beneficent results of such legislation may be achieved. Pension provisions in our law are founded upon sound public policy and with the objects of protecting, in a proper case, the pensioner and his dependents against economic insecurity. In order to confer the benefits intended, such legislation should be applied fairly and broadly."

As to the second point of decision in the Goodwin case, the court's determination that to apply the new section retroactively would amount to a gift of public moneys was based on the fact that prior to its enactment there was no right in a resigning fireman to a refund. The right being granted was a new one and could only apply to the future. But in our case the right under consideration, namely, the right of a widow

to a payment on the death of her husband from nonservice-connected causes had existed all the time petitioner's husband had been a member. Prior to 1943 the *amount* she would be entitled to under this *right* was only $1,000. In that year the amount was changed. Instead of raising the $1,000 to a flat sum or some other amount, the Legislature gave her the choice of taking the $1,000 or a refund of the moneys which her husband had paid into the fund, in effect, whichever was larger. ■ The fact that this right existed brings the case under the rule that where a pension right exists, increases in the amount payable under such right do not constitute gifts of public money. Such rule was applied in *Home* v. *Souden*, 199 Cal. 508 [250 P. 162]. There the husband of the petitioner was killed in the line of duty as a member of the Los Angeles Fire Department. Under the then existing state law, which provided for the creation of a firemen's pension fund, his widow was entitled to a pension equal to one-third the amount of salary attached to the rank which her husband held in the department at the time of his death. She was granted such pension. About six years later a city ordinance was adopted creating a commission and providing for the establishment of a pension fund, and providing that the commission was authorized to continue payments to persons already receiving pensions under the state law. Later, the ordinance was amended to provide, in effect, that the widow's pension should be a sum equal to one-half of the amount of salary her husband would have received were he still a member of the department. The commission refused to pay the widow an amount equal to more than one-third of the salary her husband was receiving at the date of his death. She thereupon sought a writ of mandate to compel the payment of the amount provided in the amended ordinance. The commission contended that the amendment could only be given prospective operation, that is, could only be applied to widows of firemen dying after the amendment took effect, as otherwise the commission would be making an invalid gift of public moneys. The court held that the widow was entitled to the increased pension and that the contention that the increase amounted to a gift or gratuity and rendered the amendment void was not a valid one.

A case quite similar to ours is *Sweesy* v. *Los Angeles etc. Retirement Bd.*, 17 Cal.2d 356 [110 P.2d 37], where the question was "whether the widow of a retired pensioner is entitled to a widow's pension rights created by an amendment adopted

after the retirement but before the death of the retired member of the pension system.

"Prior to the amendment of 1937, the act made provision for pension payments to surviving widows of pensioners who became retired by reason of disability ensuing from service. The 1937 amendment purports to extend the provisions for widow's pensions to widows of members retired by reason of age and years of service . . .

"It is contended on the part of the respondents that in order to avoid constitutional invalidity the amendment may operate prospectively only; and that such prospective operation contemplates pensions to surviving widows of pensioners only who were in active service at the time of the adoption of the amendment, that is, members who were in active as distinguished from retired service, or who later entered such active service. It is argued that if the amendment by the prescribed retroactive operation grants a pension to the widow in this case, it amounts to a gift of public money and is in violation of constitutional prohibitions . . ." (Pp. 358-359.)

In deciding against these contentions the court quoted from *O'Dea* v. *Cook*, 176 Cal. 659 [169 P. 366] : " 'A pension is a gratuity only where it is granted for services previously rendered which at the time they were rendered gave rise to no legal obligation. . . . But where, as here, services are rendered under a pension statute, the pension provisions become a part of the contemplated compensation for those services and so in a sense a part of the contract of employment itself.' " The court then said (pp. 361, 363) : "It must be accepted as the settled law of this state that unless the contrary intention plainly appears persons having a pensionable status are entitled to receive any increase of benefits which may be provided. . . . That the widow's pension affords a benefit to the pensioned member cannot be gainsaid. A pensioned member, as has been held, is as much entitled to increased benefits of the pension system as is any other member, unless the legislative body clearly indicates that such application is contrary to its intention. A provision for a pension to his widow obviously benefits the member's economic status in a way similar to an increase of his wages or pension. The problem cannot be solved merely by stating as a proposition that a provision will not be upheld which purports to grant a pension after the completion of the services for which the pension is contemplated as additional compensation. The law is well settled that additional benefits may constitutionally

be provided for members of the system who have acquired a pensionable status. . . . This state and other states [citations], recognize that increased benefits to one already having a pensionable status are constitutional and economically appropriate."

In our case, at all times after her husband's tenth year of membership in the fire department, petitioner had a "pensionable status." She would have been entitled to $1,000 upon his death. The amendment merely changed the amount that she might receive. While it was held in the Goodwin case (p. 451) that "The moneys paid into the fund were not trust funds belonging to the firemen, but public moneys of the city," such fact does not constitute the payment from such funds or the refund thereof to the widow a gift or gratuity any more than the payment of the $1,000 would.

As said in the Sweesy case, *supra*, a pension is not a gratuity when based on services rendered under a pension statute. The pension provisions are a part of the contemplated payment for those services and in a sense a part of the contract of employment itself. Thus, petitioner's husband rendered services as a member of the fire department under a pension statute giving his wife a "pensionable status" which was a part of his contract of employment.

Appellants contend that there has been an administrative interpretation of section 104 (2) by the board and that we should take that interpretation into consideration. This contention is based on exhibits which show that two applications for refunds were made by widows of police officers under section 96 (2) of the charter, which is identical in language with section 104 (2) except that it applies to widows of police officers. However, in both instances, apparently because of a misinterpretation of the decision in the Goodwin case, the applications were withdrawn without any action by the board. Hence there was no administrative interpretation.

WAS PETITIONER ENTITLED TO ANY REFUND AT ALL?

In their closing brief appellants for the first time raise the point that under section 104 (2) as amended in 1943 petitioner is not entitled to any sum other than the $1,000. The section first states that where a member dies *after 10 years of service* from nonservice-connected causes, his widow shall receive $1,000 "provided further" that if he dies "before retirement or eligibility for retirement," *regardless of length of service*, his widow shall receive a refund of all sums deducted from his

pay. Appellants contend that this means that as petitioner's husband died *after* ten years of service and *after* eligibility for retirement, petitioner can bring herself only within the first or $1,000 clause. In other words, say they, the payment of the refund can be made only to the widow of a fireman who has not retired and is not eligible for retirement. It is rather late, to say the least, to raise this contention for the first time in the closing brief. The board did not raise it when they paid petitioner, not the $1,000, but a refund of the moneys deducted from her husband's pay from May 4, 1943, the effective date of the amendment, until his death, a period of almost seven years. In its answer appellants admitted that petitioner is entitled to a refund of all deductions from and after May 4, 1943. The case was tried and decided solely on the issue of whether petitioner was entitled to a refund of the deductions made prior to that date, and in their opening brief in this court appellants stated that that was the "single issue."

■ Courts ordinarily should not consider a theory of the case which was not mentioned in the trial court and which is presented for the first time on appeal. (See *Levitt* v. *Glen L. Clark & Co.*, 91 Cal.App.2d 662 [205 P.2d 747]; *Marra* v. *Aetna Construction Co.*, 15 Cal.2d 375 [101 P.2d 490].) However, inasmuch as an attack is made upon a provision of the charter, we feel it necessary to consider the point, particularly as we have given petitioner an opportunity to brief the subject. We do not approve the practice of presenting in a closing brief for the first time a point which might be conclusive of the entire case.

In interpreting the section the interpretation placed upon it by the board is of some importance. ■ "The construction of a statute by the officials charged with its administration must be given great weight, for their 'substantially contemporaneous expressions of opinion are highly relevant and material evidence of the probable general understanding of the times and of the opinions of men who probably were active in the drafting of the statute.' " (*Whitcomb Hotel, Inc.* v. *California Emp. Com.*, 24 Cal.2d 753, 756-757 [151 P.2d 233, 155 A.L.R. 405].) As set forth above, the board interpreted the section contrary to its contentions here. Appellants' interpretation would mean that the widow of firemen dying after retirement or eligibility for retirement could not receive refunds. If that were the intention, why use the language "retirement or eligibility for retirement"? It would be sufficient to say merely "before eligibility for retirement,"

as obviously a fireman could not retire if not eligible. It would penalize a fireman who had paid into the fund more than $1,000 and who did not retire the very moment he was eligible to retire, by depriving his widow of the right to the refund of the excess over $1,000 deducted from his pay. No good reason appears for doing this. ■ The proper construction of the section is that if a fireman has had 10 years' service and dies his widow receives $1,000 no matter what amount he has paid into the fund. ■ On the other hand, regardless of service, the right of refund is extended to the widows of firemen who die before retirement as well as to those who die before they are eligible to retire. The conjunctive "or" is used and not "and." Appellants' contention is that the section should be read that the refund to widows applies only to members who die before retirement *and* members who die before eligibility for retirement. Section 104 (1) provides protection where the member dies in line of duty. Section 104 (2) provides protection where the member dies from nonservice-connected causes. A reading of the act indicates that there was no intention to bar widows whose husbands were eligible for retirement but who had not seen fit to retire. The board of trustees of the pension fund have so interpreted it. ■ A liberal construction, not a narrow one, should be given in accordance with the rule ordinarily used in construing pension legislation. (See *McKeag* v. *Board of Pension Commrs.*, 21 Cal.2d 386, 390 [132 P.2d 198].)

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 10, 1952.