[Civ. No. 10415. Third Dist. Dec. 21, 1962.]

MAE HULL JORGENSEN, Plaintiff and Appellant, v. ALAN CRANSTON, as State Controller, etc., Defendant and Appellant.

Wilke, Fleury & Sapunor, Gordon A. Fleury, Farr, Horan & Wilsdon, Frederick S. Farr and Henry I. Jorgensen for Plaintiff and Appellant.

Stanley Mosk, Attorney General, and William J. Power, Deputy Attorney General, for Defendant and Appellant.

PIERCE, P. J.—Cross-appeals have been filed. The State Controller appeals from the judgment granting a writ of mandate to Mae Hull Jorgensen, widow of Judge Henry G. Jorgensen, directing said Controller to pay her the allowances provided by the Judges' Retirement Law as amended in 1959. Mrs. Jorgensen appeals from that part of the judgment which denies her interest.

.

Henry Jorgensen died on April 17, 1954, while holding office as a superior court judge. He had served in that capacity continuously for over 25 years, and was over the age of 70 years and was therefore eligible for retirement. At the time of his death his widow, under the Judges' Retirement Act (Gov. Code, § 75104), was entitled to receive the amount of the judge's accumulated contribution to the Judges' Retirement Fund, $4,232.35. She was paid this amount. Thereafter said law was twice amended as regards benefits to widows. In 1957 it was amended (Stats. 1957, ch. 2065, p. 3661, § 4) by the addition of section 75104.4, providing (so far as pertinent here):

''The surviving spouse of any judge who dies before retirement and after becoming eligible for retirement . . . shall receive an allowance equal to one-half of the amount of the unmodified retirement allowance that would be payable to the judge were he living and retired under this chapter.''

In 1959 the first part of the section quoted above was amended (Stats. 1959, ch. 2105, p. 4874, § 1) to read: ''The surviving spouse of any judge who dies *on or after January 1, 1954,* but before retirement,'' etc. (Emphasis indicates amendment). This made it a very clear expression of legislative intent that the 50 per cent allowance was to apply retroactively to the widows of judges who had died as early as January 1, 1954. The Controller refused to make the payments to Mrs. Jorgensen as called for by the 1959 amendment, contending that said amendment insofar as it grants benefits to the widows of judges who had died prior to its enactment is unconstitutional; that it violates sections 31 and 32 of Article IV of the California Constitution forbidding, respectively, the Legislature from making gifts of public money or from granting any extra compensation or allowance to a public officer for services rendered by him.

Three cases, *Home* v. *Souden,* 199 Cal. 508 [250 P. 162], *Sweesy* v. *Los Angeles County Peace Officers' Retirement Board,* 17 Cal.2d 356 [110 P.2d 37], and *Brummund* v. *City of Oakland,* 111 Cal.App.2d 114 [244 P.2d 441] (hearing by Supreme Court denied), have fixed in California the rule that where a judge and his spouse are members of a retirement system under which the latter is entitled to be paid a pension (whether in lump sum or in monthly allowances) upon the judge's death, she is entitled to receive any increase in payments thereafter provided by statutory enactment or amendment (intended to act retroactively), even

though such increase is enacted after the retirement or death of the judge; that allowance of such increases does not violate either the constitutional prohibition against gifts of public moneys nor against allowance of additional compensation for services already rendered by a public officer. The Controller recognizes the rule but challenges its applicability to a widow who has already been paid all sums to which she was entitled under the law before amendment. He also suggests (but does not urge with much emphasis) that since the benefits under the Judges' Retirement Law prior to the amendments in question, were not payable to Mrs. Jorgensen in her status as a spouse but as the judge's named beneficiary, the rule therefore is inoperative.

Before examining these contentions specifically, we refer preliminarily to principles which are axiomatic (but which sometimes seem to become mislaid in judicial thinking):

"If a statute . . . is unconstitutional it is void, and the courts have power to treat it as a nullity, and will do so, or such parts as are in contravention of the fundamental law. But until it is shown to be plainly and manifestly in conflict with the constitution the presumption of its validity will hold good; all doubts will be resolved in its favor. Every presumption is in favor of the validity of legislative acts, and they are to be upheld unless there is a substantial departure from the organic law." (2 Sutherland, Statutory Construction (2d ed., Lewis) p. 926, § 497; see also *Lundberg* v. *County of Alameda*, 46 Cal.2d 644, 652 [298 P.2d 1].)

Another well-established principle is pertinent to this inquiry: That "pension legislation must be liberally construed and applied to the end that the beneficent results of such legislation may be achieved. Pension provisions in our law are founded upon sound public policy and with the objects of protecting, in a proper case, the pensioner and his dependents against economic insecurity. In order to confer the benefits intended, such legislation should be applied fairly and broadly."[1]

The pension case in California which is closest on its facts to the instant case is *Home* v. *Souden, supra,* 199 Cal. 508.

[1]Stated by our Supreme Court (per Carter, J.) in *Eichelberger* v. *City of Berkeley,* 46 Cal.2d 182, 188 [293 P.2d 1], quoting from *Cordell* v. *City of Los Angeles,* 67 Cal.App.2d 257, 266 [154 P.2d 31]. The same quotation is quoted in *Cottam* v. *City of Los Angeles,* 184 Cal.App.2d 523, 525 [7 Cal.Rptr. 734]. The *Eichelberger* decision gives retroactive effect to a pension increase. In the *Cottam* case a widow was reinstated to a "pensionable status" after an annulled remarriage.

There, as here, the public employee (Home as a fireman) was a member of a retirement system providing a pension to his wife in the event of his death. (Death, under the law there involved, had to occur in the course of his duties.) There, as here, a statutory amendment increased the allowance after the death of Home in line of duty. The court construed the legislative intent to give the statute retroactive effect and it held that such construction did not place the law in violation of the constitutional prohibition against gifts. The court cited and relied upon *O'Dea* v. *Cook,* 176 Cal. 659 [169 P. 366]; *Aitken* v. *Roche,* 48 Cal.App. 753 [192 P. 464]; *Kavanagh* v. *Board of Police Pension Fund Comrs.,* 134 Cal. 50 [66 P. 36].

Also closely similar to the instant case is *Sweesy* v. *Los Angeles County Peace Officers' Retirement Board, supra,* 17 Cal.2d 356, although there the public officer, who was a member of the retirement system, had retired but had not died when the change in the law increasing pension benefits was enacted. He died thereafter. ▆▆ After finding a legislative intent to make the increase retroactive, the court held that Sweesy's widow was entitled to the increased allowance, the court saying (on page 361):

"It must be accepted as the settled law of this state that unless the contrary intention plainly appears persons having *a pensionable status* are entitled to receive any increase of benefits which may be provided. Sweesy's pension rights vested at the time he was retired from service, *that is, upon the happening of the contingency upon which the pensionable right depended."* (Emphasis supplied.)

In *Sweesy, supra,* as in the case at bench, the respondent had relied upon *Lamb* v. *Board of County Peace Officers Retirement Com.,* 29 Cal.App.2d 348 [84 P.2d 183], in which the widow of a police officer was held not entitled to a pension. But the court in *Sweesy* (on page 363) distinguished the *Lamb* case, saying:

"The case . . . has no persuasive force herein. In that case there was no applicable pension system in existence at the time the officer was retired for disability resulting from performance of duty. The answer to the question whether a pensionable status may be created retroactively to include persons who had already been retired may not afford a guide in resolving the question whether an amendment to the pension law may afford additional benefits by way of a widow's pension to members who already had acquired a retired pension-

able status under the law. It does not follow that because the pension would be a gratuity in the one case, it also is in the other.''

The *Sweesy* case is the first, so far as our study discloses, to use the phrase ''persons having a pensionable status.'' It is used again in *Brummund* v. *City of Oakland*, 111 Cal.App.2d 114 [244 P.2d 441], where the court states on page 121: ''As said in the *Sweesy* case, *supra,* a pension is not a gratuity when based on services rendered under a pension statute. The pension provisions are a part of the contemplated payment for those services and in a sense a part of the contract of employment itself. Thus, petitioner's husband rendered services as a member of the fire department under a pension statute giving his wife a 'pensionable status' which was a part of his contract of employment.''

The Attorney General representing the State Controller attempts to distinguish the foregoing cases upon the theory that ''the pensionable status'' concededly enjoyed both by Judge Jorgensen and Mrs. Jorgensen during his lifetime was lost, so the argument goes, at the latest when the widow received the sum of $4,232.35—all the benefits which the Judges' Retirement Law then afforded—after the judge's death. We cannot agree.

The words ''pensionable status'' although not precisely defined either in *Sweesy* or *Brummund* were intended by the courts using this language to encompass the expectation in the public officer or employee and his spouse that if the former (the ''breadwinner'') continues faithfully in his governmental position until his death or eligible retirement, his widow upon his death will receive not only the pension benefits then provided by the retirement system but any benefits which the Legislature, in its discretion, may thereafter provide to then active judges for the benefit of *their* spouses, in view of changing conditions and circumstances in the economic world.

Chapter 2105, Statutes of 1959, amending Government Code section 75104.4 as noted above, set forth the Legislature's findings and reasons for the amendment as follows: ''The Legislature hereby finds and declares that the payment of allowances to the surviving spouse of a judge pursuant to this section . . . serves a public purpose in that it promotes the public welfare by encouraging experienced jurists to continue their service in the expectation that the Legislature will fairly provide for their surviving spouses under

changing circumstances, as the Legislature is now doing for spouses of judges who have heretofore died. Continued service by, and increased efficiency of, judges secure in this knowledge will more than compensate the State for any increased expense for allowances for surviving spouses provided by the amendment. . . .''

A comparison of the reasoning of the cases reviewed above with this legislative declaration indicates that here is an instance (and not unnaturally) where the courts and the Legislature see eye to eye. Even were it not so, and were we disposed to question the legislative policy, the legislative declarations within the bounds of reasonability and the limits of constitutional restrictions would be binding upon the courts. (*Dittus* v. *Cranston,* 186 Cal.App.2d 837 [9 Cal.Rptr. 314].)

██ As the courts have interpreted the phrase and as the Legislature from the quoted declaration quite patently conceives the status of public officers and their surviving spouses, it becomes obvious that the ''pensionable status'' does not depend upon the existence of a debtor-creditor relationship between government and the employee or his spouse at any given point of time. The status, once created, is constant, terminable only upon the happening of the condition expressed in the statute—her death or remarriage. The widow did not cease to be the widow when a sum of money was paid and it was her widowhood which fixed her status. (In this connection see *Cottam* v. *City of Los Angeles, supra,* 184 Cal.App.2d 523; here it was held that a police officer's widow's pension which had ceased when she remarried was reinstated when the remarriage was annulled.)

██ We hold that Mrs. Jorgensen did not lose her ''pensionable status'' when she was paid the only benefits she was entitled to under the law as it stood when Judge Jorgensen died; nor has she ever lost it. The Attorney General contends that Mrs. Jorgensen never did have a ''pensionable status'' because as Government Code section 75104 read when Judge Jorgensen died the benefits were payable not to his spouse as such but to his named ''beneficiary.'' And, it is argued, the judge might have named anyone to receive such benefits. The point is not persuasive. The *fact* is that, regardless of whether the judge had the power to do so, he had *not* named a person other than his wife. He had named her. She was *in fact* the person with the ''pensionable

status." Actually, after his death, she was a person in a *pensioned* status. ▋ Moreover, under our community property system, and using the analogy of insurance proceeds, the judge would not have had the power without his wife's consent to name another beneficiary as to all of the benefits. This would have been a gift of the community. (10 Cal.Jur.2d 754.)

The same reasoning which negates the contention that retroactive effect of the 1959 legislation violated the constitutional provision against gifts of public funds, also applies to refute the contention that it violates the prohibition against allowance of extra compensation for services rendered.

### The Cross Appeal for Interest

▋ As stated above, the trial court denied petitioner her right to interest. Although no opinion was written expressing the court's reasons, it may be assumed that it had before it *Sheehan* v. *Board of Police Comrs.*, 188 Cal. 525 [206 P. 70], and *Nilsson* v. *State Personnel Board*, 36 Cal.App.2d 186 [97 P.2d 843]. The *Sheehan* case was a proceeding in mandamus to compel reinstatement of a disabled police officer and payment of accrued and accruing pensions. It was there contended that the sums found due should bear interest from entry of judgment under the Civil Code section providing for payment of interest "for the use, or forbearance, or detention of money." (Civ. Code, § 1915.) The court held, however, that the defendant Board of Police Commissioners was merely the trustee of the pension fund; that said fund was held by the treasurer and payable on warrants issued by said board, whose function was to issue such warrants to those entitled. When the board refused the demand, petitioner, in suing, was acting strictly within the scope and terms of the code section authorizing mandamus "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust or station . . . (Code Civ. Proc., § 1085), and the proceeding was, therefore, not in the nature of a civil action; that in fact no such action could have been brought. The court reviewed other authorities and concluded at page 535 that petitioner "neither had nor could obtain such a money judgment in this mandamus proceeding as would bear interest" and interest was disallowed.

The similarity of the position of the State Controller with reference to the Judges' Retirement Fund to the position of

the Board and the Police Pension Fund in the *Sheehan* case is so striking that the cases can be said to be on all fours.

Counsel for Mrs. Jorgensen calls attention to Civil Code section 3287 which in 1959 was amended to read (insofar as here applicable) as follows: ''Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day. . . . This section is applicable to the recovery of . . . interest from any such debtor, including the State or any . . . public agency, or any political subdivision of the State.''

And it is reasoned by appellant therefrom that the sums she is entitled to recover are ''damages certain'' against the State, and *McPherson* v. *City of Los Angeles,* 8 Cal.2d 748, 750 [68 P.2d 707], is cited as authority for the rule that ''there seems to be no good reason for denying the remedy of mandate to compel the fulfillment of [a] statutory obligation to pay interest and allowing it to compel the payment of the judgment for the principal.''

In context, however, the writ of mandate sought in the McPherson case was to compel the payment of interest on a judgment for a condemnee's award in eminent domain. The purpose of the writ here is not the same, nor do we think it is comparable.

The question is one of statutory interpretation. What did the Legislature intend to include in Civil Code section 3287 by the words ''damages certain'' and by ''any such debtor, including the State or any . . . public agency''? Our conclusion is that whatever its intent may have been with reference to mandamus proceedings involving contractual obligations of the state or its agencies payable out of the General Fund, it does not apply to obligations payable out of the Judges' Retirement Fund (nor any other similar public retirement fund).

The Judges' Retirement Fund is a special fund created by the Legislature into which all contributions both by the judges from their salaries, and by the state or counties are paid and out of which all allowances are payable. (Gov. Code, §§ 75100, 75101, 75102 and 75103.)

This fund, like that involved in *Sheehan, supra,* is a fund held in trust and over which the Controller is the trustee. Whenever a claim is made against the fund it was not only the right of the Controller, it was his obligation, to make sure that the claimant is a party entitled and when-

ever any doubt reasonably exists to obtain an adjudication to settle the controversy. It is said in Restatement Second of Trusts, section 207, vol. 1, p. 470:

"If . . . his [the trustee's] failure to pay was due to a reasonable doubt as to his duty to make payment, he is not liable during the period while the question of his duty is being litigated, for any interest except such as he has actually received or should have received during that period."

This being the general rule, we cannot therefore attribute to the Legislature by the 1959 amendment to Civil Code section 3287 an intent to include, within its scope, claims against public retirement funds reasonably challenged by the State Controller.

The judgment is affirmed.

Schottky, J., concurred.