[Civ. No. 13032. Third Dist. June 19, 1972.]

GORDON H. BALL, INC., et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA ex rel.
DEPARTMENT OF PUBLIC WORKS et al.,
Defendants and Respondents.

[Civ. No. 13039. Third Dist. June 19, 1972.]

KASLER CORPORATION et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA ex rel.
DEPARTMENT OF PUBLIC WORKS et al.,
Defendants and Respondents.

[Civ. No. 13126. Third Dist. June 19, 1972.]

WESTERN CONTRACTING CORPORATION,
Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA ex rel.
DEPARTMENT OF WATER RESOURCES et al.,
Defendants and Respondents.

(Consolidated Appeals.)

COUNSEL

Thelen, Marrin, Johnson & Bridges, Dario DeBenedictus, John Carmack, Kindig, Bibbe, McCluhan, Rawlings & Carter, Lowell C. Kindig, and Gill & Baldwin for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Richard D. Martland, Deputy Attorney General, Harry S. Fenton, Kingsley T. Hoegstedt, Orrin F. Finch and David N. Poast for Defendants and Respondents.

OPINION

JANES, J.—These are appeals[1] from judgments declaring that section 14402.5 of the Government Code cannot be applied to plaintiffs' construction contracts entered into before the effective date of that statute, and denying plaintiffs' petitions for writs of mandate by which they sought application of the statute to their contracts.

FACTUAL BACKGROUND

*Actions 3 Civil 13032 and 3 Civil 13039*

The numerous plaintiffs in these two appeals are individuals, partnerships and corporations engaged as contractors in the construction of state highways. Prior to November 10, 1969, they entered into contracts[2] with defendant State of California[3] for construction of portions of the state highway system. Pursuant to these contracts, and as required by section 14402 of the Government Code,[4] certain monies earned under the contracts were withheld by defendant State.

---

[1] The three separate appeals were consolidated by order of this court for argument and decision. The issues posed are identical.

[2] It is represented by the parties that the two actions are concerned with 16 highway construction contracts, representing approximately $150 million in work.

[3] Both the Director of the Department of Public Works and the State Treasurer are named, also, as defendants. They, and the defendants hereinafter identified in Action 3 Civil 13126, will be referred to herein as "defendants" or the "State."

[4] Section 14402, at the relevant time, provided as follows: "Payments upon contracts shall be made as the department prescribes upon estimates made and approved by the department, but progress payments shall not be made in excess of 90 percent of the percentage of actual work completed plus a like percentage of the value of material delivered on the ground or stored subject to or under the control of the State, and unused. The department shall withhold not less than 10 percent of the contract price until final completion and acceptance of the project. However, at any

On November 10, 1969, section 14402.5 of the Government Code became effective. This section provides:

"At the request and expense of the contractor and with the approval of the department, any payment withheld pursuant to Section 14402 shall be deposited with the State Treasurer or a state or federal chartered bank as the escrow agent, who shall pay such moneys to the contractor upon the placing of securities eligible for the investment of state funds under Section 16430 or bank certificates of deposit into such escrow account by the contractor.

"The contractor shall be beneficial owner of any securities in an escrow account pursuant to this section and shall receive any interest thereon.

"Any escrow agreement entered into pursuant to this section shall contain as a minimum, the following provisions:

"(a) The amount of securities to be deposited;

"(b) The terms and conditions of conversion to cash in case of the default of the contractor; and

"(c) The termination of the escrow upon completion of the contract."[5]

---

time after 50 percent of the work has been completed, if the department finds that satisfactory progress is being made, the department may make any of the remaining progress payments in full for actual work completed, or may withhold any amount up to 10 percent thereof as the department may find appropriate based on the contractor's progress. The Controller shall draw his warrants upon estimates so made and approved by the department and the Treasurer shall pay them."

[5]Section 14402.5 was added by Statutes of 1969, chapter 1496, section 1. The State, in its reply brief, makes the following comment:

"Appellants [plaintiff contractors] represent in their statement of the case that Section 14402.5 was enacted by the Legislature 'to help relieve financial pressures, caused by the inflationary rise in interest rates, on contractors engaged in state construction work'. Such a representation of legislative intent is singularly inappropriate in a preliminary statement of facts, as neither in the legislation itself nor in the record of this case is there any indication of such a legislative intent, save Judge Goldberg's [the trial judge] suggestion that this was the Legislature's apparent intent. Moreover, any such intent as suggested by Appellants would have also required a specific budgetary provision upwards of $45 million to provide the funds necessary to meet similar obligations on the hundreds of other contracts awarded by the Department and still uncompleted at the time of its passage. Appellants also suggest that the issue is merely who is to receive the interest from progress retention funds. This statement erroneously assumes that the funds are set aside to earn interest for the State until they become due and owing. This is not so. The State schedules its awards of contracts to insure a cash flow to meet its obligations when due. Funds are not actually set aside or invested. This is not to say, however, that the State does not make use of the retention funds in its annual construction budget. The fact that the normal 5 percent total retainage is not due and payable until completion permits the advertising and award of a greater number of construction projects than would

In early February 1970, plaintiffs in Actions 3 Civil 13032 and 3 Civil 13039 applied to the Department of Public Works to invoke the procedure set forth in section 14402.5 and requested the payment of funds then withheld by defendants. In making their application, plaintiffs allegedly followed the procedure established by the department by completing the escrow agreement prescribed by the department and obtaining the consent of the surety to the performance bond previously furnished by each contractor as required by statute and by the department. The applications and proposed agreements tendered by the several plaintiffs were identical in form.

The escrow agreements required the signature of a representative of the department and that of the State Treasurer. The department, through its director, refused to execute the agreements for the following stated reasons: (1) contracts awarded prior to November 10, 1969, do not contain provisions authorizing additional payments to the contractor pursuant to the escrow procedure permitted by section 14402.5 of the Government Code; (2) the added payment authorization contained in section 14402.5 cannot be constitutionally applied to these contracts, because to do so would result in a gift and in extra compensation to the contractor, which is prohibited by article XIII, section 25 and article IV, section 17, respectively of the California Constitution; (3) the department has discretionary authority to determine whether or not to utilize the escrow procedures permitted by section 14402.5[6]; and (4) acceding to plaintiffs' requests would jeopardize the orderly process of the state highway construction program and cause economic problems.[7]

---

otherwise be possible. As would be expected, the enactment of Section 14402.5 has in fact required the State to decrease its construction budget in each succeeding year following its effective date. This has been necessary to meet the anticipated accelerated payments schedule permitted by the new provision on projects awarded after its effective date."

[6]The department has approved the deposit of securities in lieu of retentions after the effective date of section 14402.5.

[7]In this respect, the director's letter to plaintiffs states in part as follows:

"As you are aware, the Department does not maintain a fund containing retentions on outstanding contracts but, rather, depends upon the cash flow of moneys received into the State Highway Fund to meet contract payments, including the accumulated retentions as contracts are completed. The fiscal planning involved in the scheduling of contract advertisements and awards prior to the November 10, 1969 effective date of Chapter 1496 took into account the standard payment provisions.

"If we were to accede to your request for additional payments, we would likewise be required to accede to the request of any other similarly situated contractor. Since the additional payment liability represented by retentions on contracts awarded prior to the effective date of Chapter 1496 is approximately $45 million, the Department would have a $45 million obligation to meet. The State Highway Fund does not have money to pay such an obligation without defaulting on contract payments on going contracts."

Thereafter, on October 28, 1970, plaintiffs filed a petition for writ of mandamus and complaint for declaratory relief in the superior court. They sought an order of the court declaring the applicability of section 14402.5 to their contracts, and orders from the court directing execution of the escrow agreements and release of the contract payments still being withheld under those contracts. Relief in the form of recovery of lost interest was demanded for the applicable periods for those contract payments which the department withheld on the effective date of section 14402.5 and released to contractors at later dates.

On December 18, 1970, the trial court filed orders sustaining without leave to amend the State's demurrers to plaintiffs' causes of action for mandamus, and granted the State's motions for judgment on the pleadings as to plaintiffs' causes of action for declaratory relief. By a memorandum opinion the trial court held that section 14402.5 was applicable to contracts made before its effective date, but that the statute was to that extent unconstitutional as violative of section 17, article IV, of the state Constitution, which prohibits the granting of extra compensation to government contractors.

### Action 3 Civil 13126

Plaintiff, Western Contracting Corporation, and the defendant Department of Water Resources entered into a contract in 1967 for the construction of Castaic Dam in Los Angeles County. In accordance with section 14402 of the Government Code, on November 20, 1969 the state was withholding $2,224,870.59[8] from the contractor until the contract work was completed and accepted.

After the effective date of section 14402.5, plaintiff on February 19, 1970 requested the department to release monies held by the department pursuant to their contract. The department, through its director, refused to do so, basing its refusal on grounds similar to those asserted by the Department of Public Works in the state highway construction actions. Upon the department's refusal, plaintiff filed a petition for a writ of mandamus and a complaint for declaratory relief in the superior court, seeking a direction that defendants execute the escrow agreements and requesting interest on the amounts retained. Thereafter, as in the other two actions, the trial court held that section 14402.5 could not be applied to funds withheld from progress payments on contracts entered into before

---

[8]Plaintiff points out that the total contract price exceeds $60 million.

the effective date of that statute because; such application would be violative of section 17 of article IV of the California Constitution.

These three appeals followed.

### APPLICATION OF THE STATUTE

Plaintiffs contend that section 14402.5 of the Government Code applies to contract payments being withheld *on* (as well as after) November 10, 1969, the effective date of the statute.

They first contend that the terms of the statute are clear and unambiguous, since the statute in terms applies to *"any* payment withheld pursuant to Section 14402." (Italics supplied.) They argue that in order to accept the State's position, this court must read into the statute limiting language to the effect that "the funds to be released must have been retained under contracts entered into *after* the effective date of this statute." (Italics supplied.)

Plaintiffs then contend that a statute which contains no limitations on its scope is effective on its operative date to circumstances in existence at that time, and that a statute is not retroactive simply because it draws upon antecedent facts for its operation. (*Burks* v. *Poppy Construction Co.* (1962) 57 Cal.2d 463, 474 [20 Cal.Rptr. 609, 370 P.2d 313]; *State Comp. Ins. Fund* v. *McConnell* (1956) 46 Cal.2d 330, 340 [294 P.2d 440]; *Gregory* v. *State of California* (1948) 32 Cal.2d 700 [197 P.2d 728, 4 A.L.R.2d 924].) They contend that even when a statute does apply retroactively, no constitutional problem is necessarily presented.

As stated in *McCann* v. *Jordan* (1933) 218 Cal. 577, 579 [24 P.2d 457]: "The retroactive operation of a civil statute is by no means unusual, and no constitutional objection exists to such operation save where a vested right, or the obligation of a contract, is impaired." (See *Coast Bank* v. *Holmes* (1971) 19 Cal.App.3d 581, 593-597 [97 Cal.Rptr. 30] (hg. den.) [analysis of cases concerning retroactive operation of statutes].)[9]

---

[9]"The rule against retroactive construction unless such intention be 'expressly declared' has been said to be a common law rule of statutory interpretation which ' "should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent." ' [Citation.] . . . As the court stated in *Abrams* v. *Stone,* 154 Cal.App.2d 33, at page 42 [315 P.2d 453]: 'In the construction of remedial statutes such as the one now before us regard must always be had for the evident purpose for which the statute was enacted, and if the reason of the statute extends to past transactions, as well as to those in the future, then it will be so applied, although the statute does not, in terms, so direct, unless, of course, to do so would impair some vested rights or impinge upon some constitutional guaranty [citation].' " (*Coast Bank* v. *Holmes, supra,* 19 Cal.App.3d at p. 595.)

On the other hand, the State contends that from the legislative record the court must presume section 14402.5 was intended to apply prospectively and not retroactively as to preexisting contract rights.

The State invokes the general rules that a statute affecting substantive rights will, if possible, be construed as prospective only (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393-395 [182 P.2d 159]), and that if a statute is unclear as to legislative intent that it be applied retroactively, then the application of the presumption against retroactivity is mandatory. (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 172-174 [18 Cal.Rptr. 369, 367 P.2d 865]; *Helm* v. *Bollman* (1959) 176 Cal.App.2d 838, 841-842 [1 Cal.Rptr. 723].)

Here, the State argues, the Legislature did not express any intention that the statute should alter the parties' rights under contracts already in existence on its effective date. In this respect, the State points out that the State Contract Act (Gov. Code, § 14250 et seq.) sets forth a comprehensive procedure for the advertising and award of construction contracts by the State; it argues that the court should look primarily to the context in which the statute was enacted to determine the purpose for which it was intended, i.e., to obtain lower bids on public work projects, and not to provide a "windfall" to contractors on current contracts. Furthermore—the argument continues—since the Legislature did not expressly make section 14402.5 applicable to contracts entered into before its effective date, there was no express waiver of the State's valuable contract rights, and thus that public policy considerations support an interpretation that the statute applies prospectively only. Lastly, the State contends the application of section 14402.5 sought by plaintiffs would not merely change the time or procedure for the assertion of existing rights, but would wholly destroy the State's contractual right to the use of the withheld funds. (See *Helm* v. *Bollman, supra*, 176 Cal.App.2d at p. 841; see also, *Ware* v. *Heller* (1944) 63 Cal.App.2d 817, 821-822 [148 P.2d 410].)

The trial court, in its memorandum opinion,[10] disposed of the retroactivity issue as follows:

"On the face of § 14402.5 it applies to 'any payment withheld pursuant to Section 14402.' To make it applicable only to payments withheld under contracts made after November 10, 1969, would require the insertion under guise of interpretation of a limiting phrase. The usual arguments against retroactivity have no application here, *e.g.*, denial of due process or impairment of the obligation of contracts. Section 14402.5 is apparently intended to ease some of the burden imposed on contractors by the

---

[10]Identical opinions were filed in the three separate actions.

rise in costs of financing, which was imposed by the tight money market. And if this be so, the older the contract, the more the contractor is likely to need relief. I conclude, therefore, that the intention of the Legislature was exactly expressed in the section, and that it desired the section to apply to all payments that were withheld on its effective date without regard to the effective date of the contract."

■ In our view the trial court placed an undue emphasis on the word "any," and in so doing deviated from the general rule against retroactivity especially when, as here, the legislation would alter existing contracts as to the method of payment. (*Helm* v. *Bollman, supra,* 176 Cal. App.2d at p. 841.)[11] The word "any" at best is ambiguous in this context.[12] (See *Vanderbilt* v. *All Persons, etc.* (1912) 163 Cal. 507, 512-513 [126 P. 158].) It is settled law that no statute is to be given retroactive effect unless the Legislature has expressly so declared. (*DiGenova* v. *State Board of Education, supra,* 57 Cal.2d at p. 174.) We can ascertain from the legislative history of the bill adding section 14402.5 to the Government Code no intent on the part of the Legislature to permit retroactive application of the statute. We conclude, therefore, that section 14402.5 applies only to contracts entered into after its effective date. (See *Vanderbilt* v. *All Persons, etc., supra,* 163 Cal. at pp. 512-513; *Whitmire* v. *H. K. Ferguson Co.* (1968) 261 Cal.App.2d 594, 602 [68 Cal.Rptr. 78].) Our opinion in this regard is reinforced by the fact that such legislation, if permitted to operate retroactively, would modify existing competitively bid contracts. We cannot believe that this was the Legislature's intent. (See *Diamond* v. *City of Mankato* (1903) 89 Minn. 48 [93 N.W. 911, 913].)

## APPLICATION OF THE "GIFT" AND "EXTRA COMPENSATION OR EXTRA ALLOWANCE" CLAUSES OF THE CALIFORNIA CONSTITUTION

■ Assuming, however, that the Legislature intended section 14402.5 by its terms to be applicable to all contracts in existence on its effective date, in our opinion the Legislature did not have the authority to effectuate this intent under the circumstances. We agree with the trial court that the gift clause (Cal. Const., art. XIII, § 25) does not pose the critical problem. (Cf., *California Emp. etc. Com.* v. *Payne* (1947) 31 Cal.2d 210,

---

[11]Cf., *DiGenova* v. *State Board of Education, supra,* 57 Cal.2d at page 173, where the court stated: "The statement in the Education Code that its provisions are to be liberally construed with the view to effect its objects and promote justice . . . cannot be interpreted as a declaration that any of its sections is to be given retroactive effect."

[12]The trial court found an apparent intent to relieve contractors of a financial burden caused by the money market. However, there appears to be an equal possibility that the State will profit through lower bids. In any event, the Legislature could clearly have declared the statute to be retroactive, yet it failed to do so.

216 [187 P.2d 702]; but see, *California Highway Com.* v. *Riley* (1923) 192 Cal. 97, 108, 110 [218 P. 579].)[13] However, we also agree with the trial court in holding that section 17 of article IV of our Constitution does. This section in pertinent part, reads as follows: "The Legislature has no power to grant . . . extra compensation or extra allowance to a . . . contractor after . . . a contract has been entered into and performed in whole or in. part. . . ."

Although plaintiffs admit that they will derive a benefit if section 14402.5 is applied to contracts in existence on its effective date, they deny that such benefit creates a constitutional impairment. They question whether the sums of money "already earned by [plaintiffs]" constitute extra compensation within the meaning of article IV, section 17, since the amount of the contract is not changed, the contractor receives no more than the contract amount, and only the schedule of payment varies.[14] (See cases collected in 88 A.L.R. 1223 ["Power to allow additional compensation to public contractor over amount called for by his contract."].) Furthermore, plaintiffs contend the trial court erred in failing to apply the "public purpose" test to validate section 14402.5. (See *Dittus* v. *Cranston* (1959) 53 Cal.2d 284, 286-288 [1 Cal.Rptr. 327, 347 P.2d 671]; *County of Alameda* v. *Janssen* (1940) 16 Cal.2d 276, 281-282 [106 P.2d 11, 130 A.L.R. 1141]; *Stevenson* v. *Colgan* (1891) 91 Cal. 649, 651 [27 P. 1089]; *Jorgensen* v. *Cranston* (1962) 211 Cal.App.2d 292, 295-296 [27 Cal.Rptr. 297]; *Dittus* v. *Cranston* (1960) 186 Cal.App.2d 837, 842 [9 Cal.Rptr. 314].)

In the *Stevenson* case, the court stated: "We therefore hold, that in passing upon the constitutionality of a statute, the court must confine itself to a consideration of those matters which appear upon the face of the law, and those facts of which it can take judicial notice. If the law, when thus considered, does not appear to be unconstitutional, the court will not

---

[13]Article XIII, section 25 reads in pertinent part as follows: "The Legislature shall have no power . . . to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever . . . ."

The trial court in its opinion stated: "A more difficult question is whether the Legislature has the authority to effectuate the intent expressed in § 14402.5. The gift clause, Art XIII, § 25, does not seem to pose much of a problem. It is not 'difficult to assign any good reason' for accelerating the payments to the contractors. Cf. Dittus v. Cranston, 186 Cal.App.2d 837, 842 (1960). And it is easy to see how the Legislature might have concluded that easing the financial burdens of contractors would facilitate the accomplishment of public purposes. Cf. Dittus v. Cranston, 53 C.2d 284, 287-88 (1959)."

[14]This statement is true, but incomplete. If section 14402.5 were applied, plaintiffs would be paid now *and* retain the interest on the securities deposited.

go behind it, and, by a resort to evidence, undertake to ascertain whether the legislature, in its enactment, observed the restrictions which the constitution imposed upon it as a duty to do, and to the performance of which its members were bound by their oaths of office.

" 'If evidence was required, it must be supposed that it was before the legislature when the act was passed, and if any special finding was required to warrant the passage of the particular act, it would seem that the passage of the act itself might be equivalent to such finding.' (Cooley's Constitutional Limitations, 187.)" (91 Cal. at pp. 652-653.)

Plaintiffs contend that the trial court violated the foregoing principle, especially by concluding that the state "receives nothing, let alone 'money's worth,' by surrendering its right to withhold the money."

The analysis by the trial court, in its excellent memorandum opinion, completely answers the contention:

"Counsel have referred to no particular relevant local authority and to no recent authority elsewhere dealing with a similar provision [Cal. Const., art. IV, § 17]. All we know from the one local case is that § 32, the predecessor of § 17, which was substantially the same, could not be evaded simply by cancelling the contract and entering into a new one. *California Highway Com.* v. *Riley,* 192 Cal. 97 (1923); 43 Am.Jur., Public Works § 109 at 850 n. 3 (1942); cf. *Greer* v. *Hitchcock,* 271 Cal.App.2d 334 (1969). . . .

"New York has, or had, a provision fairly similar to § 17. In *Weston* v. *State,* 262 N.Y. 46, 186 N.E. 197, 88 A.L.R. 1219, 1223 (1933), the Court of Appeals defined extra compensation as 'compensation over and above that fixed by contract for the work agreed to be done. It would, either in a legal or equitable sense, be in the nature of a gratuity.' The plaintiffs argue that since they will receive no more than the contract amount, they cannot be receiving extra compensation. And following the definition without regard to the element of time, they would be correct. What their argument ignores is that they claim a right to receive the contract amount *now,* but § 14402, and hence the contracts, give them no right to receive the amounts withheld until 'final completion and acceptance'. As we have instructed juries for years, 'The present cash value will, of course, be less than the amount . . . of the future benefits'. BAJI 14.70. Since the right to receive a dollar in the future is worth less than a dollar today, if the plaintiffs were to receive a dollar today for their right to receive a dollar in the future, they would be receiving gratuities. The size of the gratuities would depend upon the length of the interval between the

time of payment and the time their right to payment was to mature and upon the rate of interest. To this extent present payment of the face value of the amount due in the future is compensation within the meaning of § 17.

"Note that unlike the New York constitution, § 17 forbids not only 'extra compensation,' but also an 'extra allowance.' Whatever an 'allowance' may be, it extends the meaning of § 17 beyond a technical definition of compensation. If receiving a present dollar for a right to a future dollar is not extra compensation, it is certainly an extra allowance.

"Suppose that § 14402.5 instead of providing for the escrow simply provided that the state would pay interest to the contractor on the amount withheld. This would certainly be extra compensation forbidden by § 17, and under the old cases also forbidden by the gift clause. *California Highway Com.* v. *Riley,* 192 Cal. 97, 108 (1923); *Conlin* v. *Board of Supervisors,* 99 Cal. 17, 21-22 (1893). The net effect of § 14402.5 is no different than it would be had it directed the state to pay interest on the amounts withheld.[15] As Judge Cardozo said in a somewhat similar case: 'We are not to "shut our minds" as judges to truths that "all others can see and understand".' *McGovern* v. *New York,* 234 N.Y. 377, 138 N.E. 26, 25 A.L.R. 1442, 1449 (1923)."

It is thus apparent that the trial court did not go behind the statute to "discover" its constitutional infirmity as applied to contracts entered into before its effective date. The statute is clear on its face and its operative effects are not at all difficult to ascertain. In our opinion, article IV, section 17, forbids this type of extra compensation or allowance. (See *Martin* v. *Henderson* (1953) 40 Cal.2d 583, 591 [255 P.2d 416]; *Jarvis* v. *Henderson* (1953) 40 Cal.2d 600, 607 [255 P.2d 426].)[16]

---

[15]In this connection we note that plaintiffs' petitions and complaints ask for interest on the amounts retained at the rate provided by law from February 1970 until paid.

[16]*Jorgensen* v. *Cranston* (1962) 211 Cal.App.2d 292 [27 Cal.Rptr. 297], relied upon by plaintiffs, is distinguishable. The pension provision there attacked was, as the State here points out, an example of "social legislation" designed to promote the general welfare, and therefore subject to the rule that such legislation "must be liberally construed and applied to the end that the beneficent results of such legislation may be achieved." (211 Cal.App.2d at p. 296.)

On the issue of retroactivity, the court in *Jorgensen* very clearly expressed a legislative intent that the benefits provided by the statute apply retroactively (i.e., "[t]o the surviving spouse of any judge who dies *on or after January 1, 1954.* . .") . (Stats. 1959, ch. 2105, § 1, italics added.)

As to the question of constitutionality, Government Code section 14402.5 neither in its terms nor its limited legislative history reflects any intent or declaration of a public purpose to be served by enactment of the legislation. (See fns. 5, 12, *supra*.) In contrast, the statute in *Jorgensen* (codified as § 75104.4 of the Gov. Code) embodied extensive findings and declarations as to the manner in which enactment

## THE DEPARTMENTS' DISCRETION TO APPROVE OR DISAPPROVE THE ESCROW AGREEMENTS

Plaintiffs' final contention is that the Directors of the Departments of Public Works and Water Resources had no discretion to refuse to execute the escrow agreements on the ground of economic hardship.[17] The contention has no merit. First of all, section 14402.5 of the Government Code specifically provides that the procedures set forth therein are to be "with the approval of the department."[18] (See *Brown* v. *Cranston* (1963) 214 Cal.App.2d 660, 669-672 [29 Cal.Rptr. 725].) Secondly, economic hardship was only one of the reasons given for the directors' refusal to execute

---

of the legislation was intended to serve a public purpose and promote the general welfare. Moreover, to the extent that plaintiffs find comfort in the constitutional utterance of *Jorgensen* (see 211 Cal.App.2d at p. 300), it is apparent from an analysis of that case that the extra compensation and allowance issue presented at best only a secondary basis for the decision. The *Jorgensen* finding supporting (in accordance with the declarative provision of the act) the "public purpose" provision of the statute there under review, and the judgment upholding the statute against charges of unconstitutionality under both the gift of public funds and the extra compensation and allowance clauses thus provide no precedential support for plaintiffs' contentions in the fact situation at bench.

[17] In asserting economic hardship as a basis for its refusal to execute an escrow agreement with plaintiff Western Contracting Corporation, it appears—albeit from the pleadings, but also from facts known to the Legislature and of which we may take judicial notice (Evid. Code, § 451)—that the Department of Water Resources is in a somewhat different and more restricted funding position than the Department of Public Works.

By its responsive pleading, the Department of Water Resources admitted that as of October 31, 1970, it was withholding, pursuant to section 14402 of the Government Code, the sum of $28,098,139 (including funds of Western) on contracts executed prior to the effective date of section 14402.5, but that these monies were currently being used to meet regular progress payments on all the department's construction contracts and were earning interest for the State at a rate in excess of 7 percent per annum. It was further averred "that distribution of any portion of that $28,098,139 to effect the early release of funds withheld under [Western's] contract or other contracts entered into prior to November 10, 1969, "would not only substantially impair [the department's] ability to make regular progress payments on all its construction contracts;" but (more importantly, and unlike the general provisions for funding state highway projects) "would necessitate a major revision in the scheduling of the sale of future issues of Water Resources Development Bonds, the principal source of funds used to meet such payments;" that this result "would adversely affect both the interest rate and the marketability of such bonds and bonds of other State agencies and would seriously impair the ability of [the department] to complete the State Water Facilities, as defined in Water Code section 12934(d), in the manner and within the time contemplated by [the department] when it began construction of such facilities." The significance of this difference in the manner of funding was of course not resolved by the trial court, nor need it be here, in view of our determination that Government Code section 14402.5 cannot constitutionally be applied to funds of Western withheld on contracts executed prior to and in force on the effective date of the statute.

[18] This feature was amended into the bill after its introduction.

the escrow agreements. In any event, the reasons for the directors' actions are largely irrelevant at this stage since their conclusions were correct.

We hold, therefore, that section 14402.5 of the Government Code applies only to public contracts executed after its effective date, and reiterate our view that if the statute was intended to apply to contracts in existence on its effective date, section 17 of article IV of the state Constitution forbids such an application.

The judgments are affirmed.

Richardson, P. J., and Morony, J.,* concurred.

*Assigned by the Chairman of the Judicial Council.