[S. F. No. 19100.   In Bank.   Feb. 10, 1956.]

GEORGE G. EICHELBERGER et al., Appellants, v. CITY OF BERKELEY et al., Respondents.

LEWIS WESCOTT, Appellant, v. CITY OF BERKELEY et al., Respondents.

Cornish & Cornish, Francis T. Cornish and Howard W. Wayne for Appellants.

Fred C. Hutchinson and Robert T. Anderson for Respondents.

CARTER, J.—This is an appeal from a judgment for defendant, city of Berkeley, in consolidated actions by plaintiffs to recover amounts allegedly accrued as payments due from pensions, and in some cases, death benefits, alleged to be payable by defendant, and for declaratory relief.

Plaintiffs Eichelberger and Wescott, here appealing, retired and became entitled to pensions after long service as firemen employed by defendant. Their retirement commenced on July 1, 1938, and February 25, 1939, respectively. Plaintiff Elsie Haggerty, also appealing, is entitled to a pension as widow of George Haggerty who died on August 18, 1938, in the line

of duty after long service as a fireman in the employ of defendant.

Defendant passed an ordinance, number 2188-N.S., effective April 28, 1938. It authorized retirement and pensions for members of its fire department who had theretofore served or should thereafter serve for a specified number of years. For those retiring, the pension was to be "one half of the average salary attached to the rank or ranks held during the three years immediately preceding the date of retirement." In the case of the widow of a fireman, killed in line of duty, the percentage was to be one third. Section 24 of that ordinance read: "The pensions granted under the terms of this ordinance shall not *increase nor* decrease with any changes in salary subsequent to the date of the granting of the pension for the rank or ranks upon which the pension was based, nor shall any changes of title or rank in the active service effect *an increase or* reduction in the existing pensions." (Italics ours.) Effective April 20, 1939, defendant adopted Ordinance Number 2254-N.S. amending Ordinance Number 2188-N.S., *supra.* One change here pertinent was in section 24, *supra.* The amendment eliminated the words italicized in the above quotation of section 24 in its original form.*

There have been salary increases in the positions formerly held by Haggerty since his death and by plaintiffs Eichelberger and Wescott since their retirement and plaintiffs claim that they are entitled to have their pensions increased accordingly. They claim that under the original 1938 ordinance (2188-N.S.) they are so entitled and if not they are entitled to increased pensions because of the increase in firemen's pay since the 1939 amendment. (2144-N.S.) Defendant claims that section 24, *supra,* of the 1938 ordinance excluded a pension which would fluctuate up or down according to the pay of firemen, and to apply the 1939 amendment to plaintiffs, who

---

*In 1944 Ordinance Number 2188-N.S. was again amended. It was recited that it was the intention of the city council that by that ordinance there was to be "a fixed amount, which would neither increase nor decrease" and clarification was necessary, hence section 24 was amended to read: "The pensions granted under the terms of this ordinance shall be based upon the average monthly rate of salary which such members shall have received during the three years immediately preceding the date of retirement, and shall be for a fixed amount that shall not increase nor decrease, regardless of any change in salary subsequent to the date of granting of the pensions for the rank or ranks that the members held prior to the granting of the pensions." It was held in *Terry* v. *City of Berkeley,* 41 Cal.2d 698 [263 P.2d 833], that that amendment could not affect persons who, like plaintiffs, retired before it became effective.

retired prior to the effective date thereof, would give them the benefit of pay increases and give retroactive effect to said amendment contrary to the intent of the city council, the legislative body of the city, in violation of the rule that statutes must be construed as being prospective only unless the contrary is expressed.

█ It is settled that where the pension statute states, as does the one here, that the pension shall be a percentage of the average salary attached to the rank held by the employee before retirement, it is construed as providing for a fluctuating pension which increases or decreases as the salaries paid to active employees increase or decrease. (*Terry* v. *City of Berkeley, supra,* 41 Cal.2d 698; *Casserly* v. *City of Oakland,* 6 Cal.2d 64 [56 P.2d 237]; *English* v. *City of Long Beach,* 126 Cal.App.2d 414 [272 P.2d 875]; *Aitken* v. *Roche,* 48 Cal. App. 753 [192 P. 464]; *Klench* v. *Board of Pension Fund Comrs.,* 79 Cal.App. 171 [249 P. 46]; *Rumetsch* v. *Davie,* 47 Cal.App. 512 [190 P. 1075].)

█ Contrary to plaintiffs' contention the foregoing rule of construction of the above mentioned language does not create such an inconsistency with section 24 of the 1938 ordinance, *supra,* that it must have the effect of overriding that section. The whole ordinance must be read to properly construe it. Thus, while the language mentioned, standing alone, is susceptible of, and will be given the construction stated in the Terry case, section 24 specifically covers the situation, and it expressly provides that pensions shall not fluctuate up or down in accordance with pay fluctuations of active firemen. It is clear, therefore, that for the period from the date of retirement in the case of plaintiffs Eichelberger and Wescott and the date of death in the case of Haggerty to the effective date of the 1939 amendment of the ordinance, said plaintiffs were not entitled to any increase in their pensions by reason of any pay increase for active firemen. This brings us, then, to the effect of the 1939 amendment and any pay increases after its effective date on the amount of pension to which plaintiffs are entitled. The 1939 amendment removed the language in section 24 which prevented the application of the rule announced in the Terry case, and hence under it, pensions do increase as the pay of active firemen is increased. Moreover, the clear implication of the 1939 amendment is that the rule in the Terry case shall prevail because it says, as the 1938 ordinance did, that a decrease in the pay of active firemen shall not *reduce* the pension. The inference is that an increase

in pay should increase the pension. Therefore, if the 1939 amendment applies to plaintiffs, they are entitled to such increase in the amount of their pensions as will be reflected from any pay increase for active firemen.

At the time of the 1939 amendment of section 24 of Ordinance Number 2188-N.S., section 7 was also amended to restate the law as it formerly existed insofar as it is here pertinent, that any member of the fire department at the effective date of the ordinance or thereafter shall receive a pension which, on reaching various ages, shall be a percentage of "the average salary attached to the rank or ranks held during the three years immediately preceding the date of retirement"; the same is true of the death benefit provisions (§§ 11 and 13). The 1939 amendment to section 24 restated it as it previously existed with the deletion of the words above mentioned and provided that the pensions "granted" under the ordinance shall not be decreased, which carries the implication that they will be increased in accordance with the fluctuation in pay of active firemen. The foregoing clearly indicates that the ordinance was intended to apply to existing pensioners especially when we bear in mind the rule that pension laws must be liberally construed to achieve their beneficent purposes (*Terry v. City of Berkeley, supra,* 41 Cal.2d 698). In this connection it has been said: "Another consideration in the matter of providing pensions for retired civil officers, and not the least in importance, is to pay such retirement compensation as will provide for the retired officer or employee means of proper subsistence. An increase in the cost of living always justly calls for an increase in the compensation of those who labor to earn a livelihood, and this proposition obviously applies as well to those who labor for the public as those engaged in private employment, and, of course, equally so to those who, for reasons prescribed by law, have been retired from a public service to which they devoted many years of faithful adherence. We may add the observation that members of police and fire departments of a city are required as such to perform public duties always beset by imminent perils to their lives and limbs—indeed, more than any other officers or employees engaged in the civil department of the public service. It is, therefore, not at all strange but gratifying to find that the government, as in the present instance, so far as police officers are concerned, has been just enough to make such provision for the compensation of such officers or employees as affords not only a fair reward to them while they are actively per-

forming their public duties, but enough to insure them, according to possible varying conditions as to the cost of living, against want or penury after they have been compelled from their accumulated years or from physical disabilities incurred while in discharge of their public duties to 'lay down the shovel and the hoe.' '' (*Klench* v. *Board of Pension Fund Comrs., supra,* 79 Cal.App. 171, 189.) In *Sweesy* v. *Los Angeles etc. Retirement Board,* 17 Cal.2d 356 [110 P.2d 37], although the increase in pension benefits was expressly made retroactive, it was also stated at page 361: ''It must be accepted as the settled law of this state that unless the contrary intention plainly appears persons having a pensionable status are entitled to receive any increase of benefits which may be provided. Sweesy's pension rights vested at the time he was retired from service, that is, upon the happening of the contingency upon which the pensionable right depended.'' In commenting on other cases the court said at page 360: ''In *Klench* v. *Board of Pension Fund Comrs., supra,* it was held that under the law there involved a pensioner was entitled to the benefits afforded by the increases in the pay attached to the rank he held at the time of his retirement, and that his right to payment was not limited to the amount he was receiving at the time of his retirement. *The conclusion was based on the observation that one who has been regularly placed on the pension roll is entitled to all the benefits of the system.* The case followed *Aitken* v. *Roche, supra,* wherein it was held that under the system and the charter provisions the pensioner was afforded the benefits of subsequent increases in the pay attached to the rank he held at the time of retirement.'' (Emphasis added.) In *Brummund* v. *City of Oakland,* 111 Cal.App.2d 114 [244 P.2d 441], the fireman was an employee and member of the retirement system when the city charter was amended in 1943 to give a widow of a fireman who died while in service from a nonservice cause $1,000 (which had previously been the case) or a return of all the contributions made by the fireman, whichever the widow chose. Plaintiff's husband died in 1950 and it was held she could recover the amount contributed including that contributed prior to 1943, the court stating at page 117: ''As the section states that in the event of the death of a member under the circumstances therein set forth, his widow shall elect whether to receive $1,000 or the 'refund of *all* such sums as have been deducted from his pay and contributed to' the fund, it is obvious that this would include the sums paid before the amendment as

well as after, unless there is some legal reason why the section cannot be made retroactive in that sense. Appellants contend that the amendment operates only prospectively, that the deductions from pay paid into the fund were not contributions but public moneys, and that to give the amendment a retroactive effect would be making a gift of public moneys and therefore illegal. . . .

"In our case the refunds provided by section 104(2) are in nowise limited to those deducted pursuant to the provisions of any particular section but 'of all such sums as have been deducted' from the firemen's pay and contributed to the fund. Thus there is no apparent intention of the Legislature to limit the refunds to sums deducted at any particular time. In determining whether section 104(2) is to apply only to moneys deducted after its enactment date, the rule set forth in *Cordell* v. *City of Los Angeles*, 67 Cal.App. 2d 257, 266 [154 P.2d 31], must be borne in mind: 'Neither can we be unmindful of the rule so firmly established in this state that pension legislation must be liberally construed and applied to the end that the beneficent results of such legislation may be achieved. Pension provisions in our law are founded upon sound public policy and with the objects of protecting, in a proper case, the pensioner and his dependents against economic insecurity. In order to confer the benefits intended, such legislation should be applied fairly and broadly.' " In *Busch* v. *Turner*, 26 Cal.2d 817 [161 P.2d 456, 171 A.L.R. 1063], the Legislature in 1943 amended the statute fixing the salary of the district attorney stating that the district attorney should receive a salary of $2,400; it had formerly been $1,800. The court said: "The 1943 legislation was sufficiently broad in its terms to include incumbents," that is, persons holding the office when the amendment was made, and further, "A statute purporting, in general terms, to increase salaries would ordinarily be construed to include incumbents. . . ." In harmony with that line of reasoning it has been held that an amendment to a pension law which increases the amount of the pensions applies to those already retired. (*Board of Trustees of Policemen's Pension Fund* v. *Schupp*, 223 Ky. 269 [3 S.W.2d 606]; *People* v. *Board of Trustees of Firemen's Pension Fund*, 103 Colo. 1 [82 P.2d 765]; *McNichols* v. *Walton*, 120 Colo. 269 [208 P.2d 1156]; see *Ridgley* v. *Board of Trustees*, 371 Ill. 409 [21 N.E.2d 286]; *Raines* v. *Board of Trustees*, 365 Ill. 610

[7 N.E.2d 489] ; *McCord* v. *Iowa Emp. Security Com.,* 244 Iowa 97 [56 N.W.2d 5].)

The foregoing interpretation is further indicated by the circumstance that to apply the 1939 amendment to plaintiffs from its effective date, is in a sense not a retroactive application inasmuch as pension payments are a continuing obligation and the ordinance is being applied only to the pensions thereafter payable. This is nevertheless true whether we say the pension right is vested when the employee enters the employment or a pension system is established after he enters the employment, or is vested when the employee retires. It could hardly be doubted that the 1939 amendment applies to firemen then in the city service. No less does it apply to an employee because he has retired. Hence *Aetna Cas. & Surety Co.* v. *Industrial Acc. Com.,* 30 Cal.2d 388 [182 P.2d 159], is readily distinguishable because there the employer's liability was fixed by a prior injury which was not merely an antecedent fact. Here the retirement is only an antecedent fact because the pension obligation is a continuing one and has force from the time the employment begins (see *Allen* v. *City of Long Beach,* 45 Cal.2d 128 [287 P.2d 765]), and the retirement does not change the employees' rights insofar as the instant case is concerned. In *Gregory* v. *State,* 32 Cal.2d 700 [197 P.2d 728, 4 A.L.R.2d 924], we held that an amendment to a statute authorizing interest on taxes paid under protest to the state was applicable to a recovery of taxes after the effective date of the amendment even though the recovery of interest was not allowed when the taxes were paid, and distinguished the Aetna case on the ground that the amendment operated on future events. (See also *Record* v. *Indemnity Ins. Co.,* 103 Cal.App.2d 434 [229 P.2d 851].)

The cases relied upon by defendant such as *O'Dea* v. *Cook,* 176 Cal. 659 [169 P. 366], *Jordan* v. *Retirement Board,* 35 Cal.App.2d 653 [96 P.2d 973], *Chaney* v. *Los Angeles County etc. Retirement Board,* 59 Cal.App.2d 413 [138 P.2d 735], *Holmberg* v. *City of Oakland,* 55 Cal.App. 270 [203 P. 167], and *Brophy* v. *Employees Retirement System,* 71 Cal.App.2d 455 [162 P.2d 939], are distinguishable. In the O'Dea case the question was whether an amendment fixing a time limit of death within one year after injury would cut off the widow of an employee previously injured, who later died, and the court felt not "compelled" to give a retroactive effect to the amendment. As was pointed out in *Kern* v. *City of Long*

*Beach,* 29 Cal.2d 848, 851 [179 P.2d 799], the O'Dea case considered the pension as vested and not subject to be taken away. In the Chaney case the change in the law would adversely affect the pensioner and the language indicated the pensioner could choose the old law or the new law. In the Brophy case the statute by its language was prospective and construed to apply to those then receiving pensions. We do not have language and legislative action equivalent to that used here in any of the cited cases. The Jordan and Holmberg cases are out of harmony with the cases hereinabove discussed and are disapproved.

The judgment is reversed and the trial court is directed to enter judgment in accordance with the views herein expressed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.