[No. D003900. Fourth Dist., Div. One. Mar. 25, 1987.]

Estate of HAZEL B. MESSNER, Deceased.
PETER RANK, as Director, etc., Plaintiff and Respondent. v.
WILLIAM R. THURSTON, as Executor, etc., Defendant and Appellant.

**COUNSEL**

Don L. Harrington for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Charlton G. Holland, Assistant Attorney General, Anne S. Pressman and Richard A. Spector, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WIENER, Acting P. J.**—This appeal by defendant William R. Thurston, as executor of the estate of Hazel B. Messner, from the $45,019.24 judgment in favor of plaintiff Peter Rank, Director of the Department of Health Services (Department), presents the identical issue decided in *Department of Health Services* v. *Fontes* (1985) 169 Cal.App.3d 301 [215 Cal.Rptr. 14]. *Fontes* held that "Welfare and Institutions Code section 14009.5[1] authorizes respondent Department of Health Services to claim reimbursement for Medi-Cal benefits from the estate of a Medi-Cal recipient, when the recipient died after the effective date of the statute, but the benefits were received before the effective date of the statute." (*Id.* at p. 303.) As we shall explain, although we agree with *Fontes* that section 14009.5 must be applied prospectively, we conclude prospective application of the statute means the Department may be reimbursed for only those Medi-Cal benefits paid after the effective date of the statute. Accordingly, we reduce the $45,019.24 judgment to $12,639.52 representing the Medi-Cal services rendered after June 28, 1981, the date section 14009.5 became effective. (Stats. 1981, ch. 102, § 101, p. 738, amended by Stats. 1981, ch. 1163, § 3, pp. 4654-4655, eff. Oct. 2, 1981.)

FACTUAL AND PROCEDURAL BACKGROUND

Following Messner's death on December 7, 1982, the Department timely filed a creditor's claim against her estate for $45,019.24 representing the total amount paid to various health care providers who had treated her under the Medi-Cal program from January 1, 1977, until the date of her death. The claim tracked the wording of section 14009.5 and alleged that reimbursement was authorized pursuant to that section since the Medi-Cal services rendered on Messner's behalf occurred after she was 65 and that she had died without leaving a surviving spouse or any surviving children under age 21 or any surviving children who were blind or disabled within the meaning of the Social Security Act. The claim was rejected. The Department successfully moved for summary judgment. This appeal ensued.

---

[1]Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code. Section 14009.5 provides in part: "Notwithstanding any other provision of this chapter, when a decedent has received health care services under this chapter or Chapter 8 (commencing with Section 14200) the department may claim against the estate of the decedent, ... an amount equal to the payments for the health care services received. The department may not claim where the eligible person was under 65 when services were received, or where there is a surviving spouse, or where there is a surviving child who is under age 21 or who is blind or permanently and totally disabled, within the meaning of the Social Security Act."

DISCUSSION

Since the facts are not in dispute, the threshold question is whether the Legislature intended section 14009.5 to be applied retroactively.

It is an established canon of statutory interpretation that statutes must be applied prospectively unless the Legislature clearly intended a retroactive application. (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 Cal.Rptr. 159].) In this case the Department first suggested that the legislative intent expressing retroactive application could be inferred from the fact that section 14009.5 was enacted as an urgency measure at a time when the State of California was in a financial crisis and deep cuts in the Medi-Cal budget were proposed. Even though we had serious doubts that California's fiscal problems would have been materially alleviated by obtaining reimbursement from the small and probably impecunious class of Medi-Cal recipients defined by section 14009.5, we were nonetheless intrigued by the argument. The argument implicitly recognized that only through retroactive application could the Department obtain reimbursement of those benefits paid before the statute was enacted. At oral argument the Department's counsel may have appreciated the self-defeating aspect of his contention because he conceded that the Legislature intended section 14009.5's prospective application. This concession is hardly dramatic in light of the legislative history of this provision.

Section 14009.5 was enacted as part of a chapter amending, adding, and repealing over 160 statutes in 10 different codes. Many of these statutes were in the Welfare and Institutions Code and were directed to developing pilot programs to save money, i.e., prospective savings. In this light, any force to a retroactivity argument based on the urgency of the legislation becomes ethereal. Moreover, we cannot overlook the Legislature's silence on this issue. Had the Legislature wanted section 14009.5 to be applied retroactively, it could have easily so stated. (See *Perry* v. *Heavenly Valley* (1985) 163 Cal.App.3d 495, 500-501 [209 Cal.Rptr. 771].) Lacking any meaningful rationale for retroactivity, we are unwilling to equate the Legislature's silence with the expression of clear legislative intent essential for retroactivity. Thus we partially agree with *Fontes*—section 14009.5 must be given prospective application only. (*Department of Health Services* v. *Fontes, supra,* 169 Cal.App.3d at p. 304.) Our disagreement with *Fontes* is in its resolution of the following question.

*Fontes* describes the pivotal question as "whether application of section 14009.5 to benefits received before the effective date of the statute, claimed from an estate which arose after the effective date of the statute, constitutes an unauthorized retroactive application." (*Department of Health Services* v.

*Fontes, supra,* 169 Cal.App.3d at p. 304.) In light of *Fontes*'s premise that section 14009.5 must be applied prospectively, we interpret this question as asking whether prospective application of the statute permits the Department to reach those benefits paid before the statute was enacted. Our redefinition of the question, perhaps unnecessarily pedantic, is motivated by our wish to focus on the narrow issue before us, i.e., the meaning of prospective application. This case does not present the broader, more complex question of whether it would have been constitutionally valid to apply the statute retroactively had the Legislature so intended. The resolution of this latter question requires a court to decide whether retroactive application comports with due process (see, e.g., *In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371]) or impairs contract rights (see, e.g., *In re Marriage of Buol* (1985) 39 Cal.3d 751, 756 [218 Cal.Rptr. 31, 705 P.2d 354]). A similar constitutional analysis is not required to decide the case before us. ■ We only have to determine whether if section 14009.5 is applied prospectively can the Department reach Medi-Cal benefits paid before the statute was passed.

We have labored this point because of *Fontes*'s concluding paragraph which states: "The application of this statute to estates which arose after its effective date did not affect any existing rights and accordingly, had no impermissibly retroactive effect, even where the benefits had been received prior to its effective date." (*Department of Health Services* v. *Fontes, supra,* 169 Cal.App.3d at p. 305.) The phrase "no impermissibly retroactive effect" suggests that *Fontes*'s concern with the interesting but irrelevant issue of the validity of the statute's retroactive application may have obscured its analysis of the more mundane question pertaining solely to what prospective application of section 14009.5 means.

In the absence of *Fontes,* we would have thought the answer to the question before us was self-evident. ■ By definition, a prospective law, the opposite of a retrospective one, means a law which has no effect on rights, obligations, acts, transactions, and conditions performed or existing before the statute was adopted. (See *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* 30 Cal.2d at p. 391.) Whether a statute's application is retroactive depends on whether it operates to change the legal effect of past transactions. (*Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 153 [233 Cal.Rptr. 308, 729 P.2d 743].) ■ Pursuant to this definition, the only way section 14009.5 can operate prospectively is for the Department to be reimbursed for Medi-Cal services rendered after the statute became effective. To conclude otherwise permits the statute to materially affect earlier acts and transactions contrary to the reasonable expectations of the parties. Here, for example, it is undisputed that Messner obtained most of her benefits at a time when the relevant statutory provisions precluded the Department from

seeking reimbursement. (See *County of San Diego* v. *Muniz* (1978) 22 Cal.3d 29, 33 [148 Cal.Rptr. 584, 583 P.2d 109] ["(a)t common law, in the absence of fraud in procuring relief, a recipient was under no obligation to repay the government agency disbursing the charity. (Citations.)"].) In these circumstances, it was certainly reasonable for Messner, as it would be for other similarly situated persons, to expect that her accumulated savings would be distributed in accordance with her respective estate plans and not used to satisfy a claim made under a statute which was not in existence at the time the services were rendered. According to the Department's rationale, if a post-65-year-old person had the misfortune of dying seconds after the statute became effective, that decedent's estate would be subject to a claim for services all of which were rendered *before* the statute's effective date. To permit the statute to operate in a fashion which authorizes the creation of an after-the-fact debt resulting in the partial or total elimination of a person's life savings is a classic illustration of a statute's retroactive application materially changing the legal effect of past transactions.

We disagree with *Fontes*'s statement that "[t]his statute merely affected the distribution of a Medi-Cal recipient's estate." (*Department of Health Services* v. *Fontes, supra,* 169 Cal.App.3d at p. 305.) More is involved here than "merely" changing the distribution of one's estate. The statute effectively prevents a person from controlling the testamentary disposition of some or all of his or her property. The notion of taking property without notice is contrary to our fundamental commitment to due process.

This case is not controlled by the principle that "[t]estamentary disposition, as well as intestate succession, is a creature of statute and is controlled by the law in effect as of the date of the death." (*Department of Health Services* v. *Fontes, supra,* at p. 305.) Among the authorities *Fontes* cites for this proposition is *Estate of Phillips* (1928) 203 Cal. 106 [263 P. 1017]. In *Phillips,* an amendment to the Civil Code provided that for purposes of intestate disposition, a spouse was entitled to receive 100 percent of the community property. This amendment materially changed prior law which had provided that although one-half of the decedent's property went to the surviving spouse, the other one-half went to the decedent's children. The trial court ruled the statute would apply to property acquired *before* the effective date of the amendment even though this deprived the decedent's children of their anticipated inheritance. In affirming the trial court, *Phillips* held that applying the statutory change was not an unconstitutional retroactive application of the statute. *Phillips,* however, affecting a child's potential inheritance because of a change in the law, is substantially different than section 14009.5 which authorizes a claim against the estate itself in order to take property in exchange for what had been a nonexistent debt.

We also are not persuaded that section 14009.5 is being applied prospectively because it affects only those persons who died after the statute was enacted. Deciding this issue by phrasing the statute's application in chronological terms is question begging tied to the assumption that the statute was procedural having no affect on the substantive rights of the recipient. As noted earlier, we believe the statute is substantive because it has imposed " 'a new or additional liability and [has] substantially affect[ed] existing rights and obligations.' " (*In re Marriage of Buol, supra,* 39 Cal.3d at pp. 758-759.) In reaching this conclusion, we disagree with the statement in *Fontes* that "this statute did not affect any existing rights held by the Medi-Cal recipient's estate because such an entity did not even come into existence until the time of her death." (*Department of Health Services* v. *Fontes, supra,* 169 Cal.App.3d at p. 305.) The fact the Department did not seek reimbursement until there was an estate created after the statute was adopted does not transform the statute's application here into a prospective application. If we were to accept the Department's reasoning—that the date of recovery is the guiding factor—then, an injured employee could seek increased benefits for an injury which occurred before a Labor Code amendment because his hearing did not occur until after the amendment's effective date; the state could impose a restitution fine on a defendant because a statute, enacted after the offense, became effective before sentencing; a mining company could obtain reimbursement for workers' compensation payments for an injury occurring before a Labor Code amendment because it did not seek recovery until after the amendment was passed. But that is not the law. The law looks to when the right arose, not when recovery was sought. (See *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* 30 Cal.2d 388 [the right derived from the injury, not from the disability determination]; *People* v. *Palomar* (1985) 171 Cal.App.3d 131 [214 Cal.Rptr. 785] [restitution fine]; *State of California* v. *Ind. Acc. Com.* (1957) 48 Cal.2d 355 [310 P.2d 1] [right derived from injury, not from when payment is made]; see also *Fox* v. *Alexis* (1985) 38 Cal.3d 621 [214 Cal.Rptr. 132, 699 P.2d 309] [revocation of driver's license derived from commission of offense, not lack of "present fitness" to drive].)[2]

---

[2]Even the cases cited by *Fontes* do not support its conclusion. For example, *Fontes* says "[a] statute is not retroactive in its application merely because it draws upon antecedent facts for its operation." (*Department of Health Services* v. *Fontes, supra,* 169 Cal.App.3d at p. 304, citing *Burks* v. *Poppy Construction Co.* (1962) 57 Cal.2d 463, 474 [20 Cal.Rptr. 609, 370 P.2d 313].) This statement in *Burks,* however, is drawn from a trio of cases including *Eichelberger* v. *City of Berkeley* (1956) 46 Cal.2d 182 [293 P.2d 1] and *Gregory* v. *State of California* (1948) 32 Cal.2d 700 [197 P.2d 728, 4 A.L.R.2d 924]. In *Gregory,* an amendment to the gift tax statute permitted payment of interest on tax overpayments. The California Supreme Court held the statute could be applied only to allow the taxpayer who overpaid his gift taxes to receive interest from the effective date of the statute. (*Gregory* v. *State of California, supra,* at p. 702.) In *Eichelberger,* the California Supreme Court allowed a pensioner to receive an increase in his pension only after the statute became effective. (*Eichelberger* v. *City of Berkeley, supra,* at p. 189.) Thus, even though these respective statutes drew upon antecedent facts for their operation, they were applied in a manner which permitted recovery for only those sums accruing after, and not before, the effective date of the statute.

Based upon the foregoing, we hold the Department's right to seek reimbursement arose with the adoption of the statute and the payment of benefits after its effective date, not when the Department applied for reimbursement from Messner's estate. Accordingly, the Department is entitled to reimbursement only for $12,639.52 representing those payments made after the effective date of section 14009.5.

## DISPOSITION

The $45,019.24 judgment in favor of plaintiff Peter Rank, Director of the Department of Health Services against William R. Thurston as executor of the estate of Hazel B. Messner is modified to $12,639.52 and as modified, the judgment is affirmed. The plaintiff is to bear all costs for this appeal.

Lewis, J., and Todd, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 25, 1987.