[No. B072203. Second Dist., Div. Seven. Sept. 22, 1993.]

CALIFORNIA COUNTRY CLUB HOMES ASSOCIATION, INC., et al.,
Plaintiffs and Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Respondents;
TWENTIETH CENTURY FOX FILM CORPORATION, Real Party in
Interest and Respondent.

1428

## COUNSEL

Tuttle & Taylor, Mark A. Borenstein, Richard B. Wentz and Kate Schneider for Plaintiffs and Appellants.

Sabrina S. Schiller as Amicus Curiae on behalf of Plaintiffs and Appellants.

James K. Hahn, City Attorney, Claudia McGee Henry and Anthony Saul Alperin, Assistant City Attorneys, and Jeri L. Burge, Deputy City Attorney, for Defendants and Respondents.

Latham & Watkins, Robert D. Crockett, Madeline P. Janis-Aparicio and Matthew W. Sonsini for Real Party in Interest and Respondent.

## OPINION

**JOHNSON, J.**—In this case we are asked to interpret recent amendments to the Subdivision Map Act. (Gov. Code, § 66410 et seq.)[1] In 1985 the Legislature amended section 66452.6, subdivision (a) to grant automatic 36-month extensions to file final maps provided a developer, who is required as a condition of approval of a tentative map to spend large sums of money on off site improvements, files a phased final map before the tentative map would otherwise expire. That amendment also provided mandatory extensions could not extend the life of a tentative map beyond 10 years from its initial approval date. In 1992 the Legislature amended subdivision (e) of this

---

[1]All further statutory references are to the Government Code unless otherwise indicated.

section to clarify discretionary extensions of time of up to three years could extend the life of a tentative map beyond the time otherwise provided by the mandatory extension provisions of subdivision (a).

When the City of Los Angeles acknowledged Twentieth Century Fox Studio was entitled to a mandatory extension to file a final map on a tract located in Century City which had the effect of extending the overall life of the tentative map beyond 10 years, a homeowner and several homeowner associations challenged the validity of the additional extension. The homeowners contended the City of Los Angeles violated the express mandate of the statute by authorizing a mandatory extension beyond 10 years from the map's approval date. The parties agreed the 1992 amendment to the Subdivision Map Act (§ 66452.6, subd. (e)), makes clear the life of a tentative map may be as much as 13 years. However, the homeowners contended any extension beyond the 10-year limit of section 66452.6, subdivision (a) must be pursuant to a discretionary extension rather than a mandatory extension. Fox already had received three years of discretionary extensions at an early stage of the tentative map's life, thus exhausting the maximum of three years' worth of discretionary extensions the statute permits. Accordingly, the extension which extended the life of the tentative map to 12 years in this case of necessity was an automatic extension under subdivision (a) of section 66452.6. Therefore, the homeowners argued the extension violated the express statutory language of subdivision (a) which states mandatory extensions may not extend the life of a tentative map beyond 10 years.

The trial court found the mandatory extension which extended the tentative map 2 years beyond its 10-year anniversary date was permissible under section 66452.6, as fewer than an aggregate of 10 years of mandatory extensions were granted anytime during that 12-year period. We affirm the judgment.

### FACTS AND PROCEEDINGS BELOW

On June 17, 1982, the City of Los Angeles (City) conditionally approved a subdivision plan for 54-acre tentative tract No. 35678 on the site of the current Twentieth Century Fox Studio in Century City. Twentieth Century Fox is the owner of the property (Fox). The tentative subdivision plan provided for 19 lots, a maximum of 2,400 new condominium units on 14 residential lots and a hotel and commercial development on 4 commercial lots. The tentative map provided for the filing of 15 phased final maps for the residential lots and up to 4 phased final maps for the commercial lots.

At the time the tentative map was approved it had an initial period of validity of three years (§ 66452.6, subd. (a)). However, upon application of

the subdivider, the City had discretion to extend this initial period by up to three additional years. (§ 66452.6, subd. (e).) Thus, pursuant to section 66452.6, subdivision (a) the tentative map would have expired on June 17, 1985, unless extended by the City under its discretionary authority. (§ 66452.6, subd. (e).)

In May 1985 the City granted Fox's request for a discretionary extension of two years, or until June 1987.

In 1985 the Legislature amended subdivision (a) of section 66452.6 to provide for automatic three-year extensions of tentative maps upon the filing of a phased final map for those developers required to spend $100,000 or more on off site improvements as a condition of approval of a tentative map.[2] The amendment also provided such automatic extensions could not extend the life of a tentative map beyond 10 years from the approval or conditional approval of the tentative map.[3]

In 1987, when the two-year discretionary extension was about to expire, Fox requested an additional year pursuant to the City's discretionary authority and an automatic three-year extension upon the filing of a phased final map pursuant to the recent amendment to section 66452.6 for required off site expenditures in excess of $100,000. The City granted the requests which extended the filing deadline of the final map to June 17, 1991.

In 1991 Fox filed another phased final map, which under the amended statute entitled it to another three-year automatic extension to file the final subdivision map. At the time all parties understood the language of the 1985 amendment to subdivision (a) of section 66452.6 to permit the life of a

---

[2] The present figure is $125,000 and may be adjusted in the future for inflation. (Stats. 1989, ch. 1268, § 1, p. 4997.)

[3] Section 66452.6, subdivision (a) provides in pertinent part: "An approved or conditionally approved tentative map shall expire 24 months after its approval or conditional approval, or after any additional period of time as may be prescribed by local ordinance, not to exceed an additional 12 months. However, if the subdivider is required to expend one hundred twenty five thousand dollars ($125,000) or more to construct, improve, or finance the construction or improvement of public improvements outside the property boundaries of the tentative map, excluding improvements of public rights-of-way which abut the boundary of the property to be subdivided and which are reasonably related to the development of that property, each filing of a final map authorized by Section 66456.1 shall extend the expiration of the approved or conditionally approved tentative map by 36 months from the date of its expiration, as provided in this section, or the date of the previously filed final map, whichever is later. The extensions shall not extend the tentative map more than 10 years from its approval or conditional approval. . . ."

The Los Angeles Municipal Code provides a tentative map is initially valid for a period of three years. (L.A. Mun. Code, § 17.07A.)

tentative map to extend to 10 years but no further whether extensions of time extending the life of the tentative map to that point were automatic under subdivision (a) or were granted pursuant to the City's discretionary authority (§ 66452.6, subd. (e)). As a result, the parties agreed to a one-year automatic extension to June 1992, or ten years from the initial approval of the tentative map.

In 1991 the Legislature amended subdivision (e) of section 66452.6 to clarify the discretionary extensions of time of up to three years provided by that subdivision were in addition to the period of time authorized in subdivision (a) regarding mandatory extensions.[4] That amendment became effective January 1, 1992.

In 1992 Fox requested a two-year extension to file a final map, representing the balance of what otherwise was the three-year automatic extension granted in 1991. The City granted the extension to June 1994.

Believing a mandatory extension which continues the life of a tentative map beyond a tentative map's 10-year anniversary date to violate subdivision (a) of section 66452.6, appellants, California Country Club Homes Association, Inc., Cheviot Hills Homeowners Association, Inc., Friends of Westwood, Inc., and Allan Rabinowitz (homeowners), filed a petition for writ of mandate seeking injunctive and declaratory relief to overturn the extension of the tentative map to 1994. The City and Fox demurred to the petition and moved to strike certain portions of its allegations. The court sustained the demurrers with leave to amend. Homeowners filed an amended petition which added a claim the City's 1992 extension of the tentative map improperly applied the 1985 amendments retroactively to the tentative map. ■ ■ The City and Fox again demurred to the petition, contending the 1985 amendment to section 66452.6, subdivision (a) had only prospective application to the tentative map and in any event any challenges to its application in 1987 were barred by the 90-day statute of limitations (§ 66499.37), homeowners lacked standing to seek a writ of mandate and there was no ministerial duty the City failed to perform as the 1992 to

---

[4]Section 66452.6, subdivision (e) provides in pertinent part: "Upon application of the subdivider filed prior to the expiration of the approved or conditionally approved tentative map, the time at which the map expires pursuant to subdivision (a) may be extended by the legislative body or by an advisory agency authorized to approve or conditionally approve tentative maps for a period or periods not exceeding a total of three years. The period of extension specified in this subdivision shall be in addition to the period of time provided by subdivision (a). . . ."

1994 extension was automatic and not subject to the City's discretionary authority.[5]

The court sustained the demurrers without leave to amend, placed the motion to strike off calendar and dismissed the petition. In so ruling the court found the petition failed to allege facts sufficient to constitute a cause of action on the grounds the City's and Fox's interpretation of the applicable provisions of the Subdivision Map Act was proper. This appeal followed.

## DISCUSSION

I. *Applying the 1985 Amendment to a Tentative Map Which Had Not Expired Prior to the Effective Date of the Amendment Constitutes Prospective Application of the Amendment to an Existing Right or Entitlement.*

Homeowners contend Fox's tentative map was not entitled to 10 years of mandatory extensions in the first instance.[6] They contend the statutes in effect at the time Fox's map was approved provided a maximum six-year life for a tentative map. ██ ██ Consequently, they argue, Fox may not take advantage of the automatic extension provisions of section 66452.6, subdivision (a) enacted in 1985 because it would constitute an unauthorized retroactive application of those provisions without express authorization by

---

[5]Fox demurred to the homeowners' petition on the grounds, inter alia, they lacked standing to file suit. Fox contended the individual and corporate plaintiffs were not sufficiently beneficially interested in the subject matter of the litigation. (See, e.g., *Braude* v. *City of Los Angeles* (1990) 226 Cal.App.3d 83, 88 [276 Cal.Rptr. 256].) Fox reasserts this argument on appeal.

In *Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 121 [109 Cal.Rptr. 724], the court held a corporation had standing to challenge a development project where the complaint alleged the plaintiff was a corporation whose members lived in the affected area and that its members would suffer injury if the challenged project authorized under an allegedly unlawful ordinance was allowed to proceed. In the present case the homeowners alleged they, or their members on whose behalf they sued in a representative capacity, lived in close proximity to the challenged project and their members' property would suffer injury if the project was allowed to continue without the benefit of another site review and environmental impact report which would be required if the tentative map had in fact expired under the statutes. These allegations are sufficient to confer standing on the individual as well as corporate homeowners. (See also *California Dental Assn.* v. *California Dental Hygienists' Assn.* (1990) 222 Cal.App.3d 49, 61 [271 Cal.Rptr. 410]; *Tenants Assn. of Park Santa Anita* v. *Southers* (1990) 222 Cal.App.3d 1293, 1300 [272 Cal.Rptr. 361].)

[6]We granted leave to the Federation of Hillside and Canyon Associations, Inc., Westside Civic Federation and San Fernando Valley Federation of Homeowners to file a brief as amicus curiae on behalf of the homeowners. Because the arguments advanced by the homeowners and amicus curiae are virtually identical, for convenience this opinion will not attempt to differentiate between their overlapping arguments.

the Legislature indicating its intent for retroactive application.[7] The trial court did not directly rule on this allegation below but a finding the 1985 amendment was not improperly applied retroactively was implicit in its ruling finding the City's and Fox's interpretation of the Subdivision Map Act as amended was correct.

■ Generally, statutes are not applied retroactively unless there is a clear legislative intent for retrospective application. (See, e.g., *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159] ["established cannon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent."]; *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1208 [246 Cal.Rptr. 629, 753 P.2d 585] [legislative provisions are presumed to operate prospectively and should be so interpreted unless express language or clear and unavoidable implication negates the presumption].) Because the Legislature did not expressly state the 1985 amendment was intended to operate retroactively, homeowners contend Fox was not entitled to apply the 1985 amendment's 10-year maximum period of mandatory extensions to its tentative map approved before the effective date of the amendment.

■ No reported decision has directly interpreted the 1985 amendment to section 66452.6, subdivision (a). Thus, homeowners rely on a federal decision deciding the retroactive effect of a later amendment to another subdivision of section 66452.6. In *In re Eastport Associates* (Bankr. C.D.Cal. 1990) 114 Bankr. 686, a developer's tentative map had expired due to the county's refusal to sell him a portion of land which was a condition of a proposed subdivision. The developer later filed for bankruptcy and in that action sought a declaration the county's action amounted to a development moratorium, which under section 66452.6, subdivision (f), entitled it to an

---

[7]When the tentative map was about to expire in 1987 Fox filed a phased final map and the City granted an automatic three-year extension pursuant to the newly amended statute. Because the City made the decision in 1987, the 1985 amendment applied to Fox's tentative map, and because that decision was not challenged, the City and Fox contend any argument the 1985 amendment does not apply is barred by the 90-day statute of limitations for challenges to acts concerning subdivision maps. (§ 66499.37; *Griffis* v. *County of Mono* (1985) 163 Cal.App.3d 414 [209 Cal.Rptr. 519]; *Hunt* v. *County of Shasta* (1990) 225 Cal.App.3d 432 [275 Cal.Rptr. 113].)

We do not view the homeowners' contention so narrowly. The homeowners timely challenged the 1992 extension. The 1992 mandatory extension necessarily was based on the assumption the tentative map was entitled to mandatory extensions authorized by the 1985 amendment to section 66452.6, subdivision (a). Because the 1992 extension implicated the issue of the propriety of the application of the 1985 amendment to the tentative map, we reach the merits of the controversy concerning its alleged retroactive application.

additional extension of up to five years. At the time of the county's inaction the statute then in effect defined a development moratorium as any period in which a final map could not be filed due to acts or omissions of the local agency or legislative body that approved or conditionally approved the tentative map. This definition, however, did not include a period during which an outside public agency's acts or omissions prevented the developer from filing a final map. Because the developer's situation fell outside the statutory definition of development moratorium, the bankruptcy court dismissed the developer's action.

The developer then lobbied the Legislature to expand the statutory definition of development moratoriums to include conditions where outside public agencies prevent the preparation and filing of a final map. When the amendment became effective the developer renewed its motion in the bankruptcy court. The bankruptcy court granted the developer's motion for summary judgment finding the newly enacted amendment applied retroactively to revive the developer's tentative map which had expired prior to enactment of the amendment.

The city appealed the ruling to the district court. The district court reversed. The district court found the new legislation applied to tentative maps which had not yet expired at the time the amendment became effective. (114 Bankr. at p. 692.) However, the district court found applying the new amendment to revive a tentative map which had already expired at the time the legislation was enacted would constitute retroactive application of the amendment which neither the Legislature nor legislative history of the amendment expressly or impliedly authorized. (*Ibid.*)

The developer appealed to the Ninth Circuit Court of Appeals which affirmed the district court's finding the amendment would have an improper retroactive application if applied to the developers' situation to revive an already expired map. (*In re Eastport Associates* (9th Cir. 1991) 935 F.2d 1071, 1081.)

The decision in *In re Eastport Associates* is distinguishable from the case at bar. The developer in that case had lost its entitlement to develop the land when the time elapsed and it had not filed a final map. As a result it had no continuing right or entitlement to which the new amendment could have application. In other words, for the new amendment to apply to the tentative map in that case would have required applying the amendment to a time period before the amendment's enactment date and before its effective date to resurrect a map representing the development right long after its validity

had expired. However, in this case, Fox's tentative map had not yet expired when the amendment became effective. Because the tentative map in this case was still valid, the changes in the 1985 amendment to section 66452.6, subdivision (a) did not need to be invoked to alter or change past events. In other words, retroactive application was not necessary in this case even though the tentative map was initially approved before the amendment's effective date. Thus, because Fox's tentative map was still valid, the 1985 amendment was applicable to any later actions taken concerning that map after the amendment's January 1, 1986, effective date.

This interpretation of how statutory changes have prospective effect on rights and obligations in existence at the time of a statute's effective date is consistent with several decisions of the Supreme Court in analogous situations. For example, in *Douglas Aircraft Co.* v. *Cranston* (1962) 58 Cal.2d 462 [24 Cal.Rptr. 851, 374 P.2d 819, 98 A.L.R.2d 298] the issue was whether recent enactment of the Unclaimed Property Act (Code Civ. Proc., § 1500 et seq.) required Douglas Aircraft to pay over to the state unclaimed wage claims where the statute of limitations had run on the claims prior to the act's effective date. The court acknowledged the general presumption of statutes having strictly prospective application in the absence of legislative language to the contrary. Finding no such declaration of legislative intent for retroactive application, the court stated the act "must be interpreted as applying only to claims on which the statute of limitations had not run on the effective date of the act." (58 Cal.2d at p. 466.) The court found application of a lengthened limitations period to matters not yet barred violated no constitutional principles. " 'The extension of the statutory period within which an action must be brought is generally held to be valid if made before the cause of action is barred. . . . The party claiming to be adversely affected is deemed to suffer no injury where he was under an obligation to pay before the period was lengthened. This is on the theory that the legislation affects only the remedy and not a right. . . . An enlargement of the limitation period by the Legislature has been held to be proper in cases where the period had not run against a corporation for additional franchise taxes. . . , against an individual for personal income taxes. . . , and against a judgment debtor . . . . It has been held that unless the statute expressly provides to the contrary any such enlargement applies to matters pending but not already barred. . . .' " (58 Cal.2d at p. 465, internal citations omitted.) Thus, because the wage claims were barred by the statute of limitations before the effective date of the act, Douglas Aircraft was not required to pay those sums to the state.

Similarly in *Sitzman* v. *City Board of Education* (1964) 61 Cal.2d 88 [37 Cal.Rptr. 191, 389 P.2d 719], a board of education contended a statutory

amendment granting probationary teachers a hearing before termination was inapplicable to a probationary teacher hired prior to the amendment. The board asserted applying the amendment to the teacher would constitute retroactive application of the amendment without legislative authority. The Supreme Court disagreed application of the amendment to the probationary teacher would have other than merely prospective effect. "A statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment. [Citation.] In *Eichelberger* v. *City of Berkeley*, 46 Cal.2d 182, 185-189 [293 P.2d 1], we held that a statute which increased pension benefits of persons retired prior to its effective date did not operate retroactively, pointing out that pension payments are a continuing obligation and that the increase would apply only to payments coming due after the effective date of the statute. In the present case there was a continuing employment, and the benefits are conferred only for periods subsequent to the effective date of the statute." (61 Cal.2d at pp. 89-90.) Our high court distinguished various cases interpreting statutes conferring tenure only if the school rehired the teacher after the effective date of the statute. "Under the statutes there involved, the obtaining of tenure was dependent upon affirmative conduct by the board, namely, the rehiring of a teacher, and in those cases the rehirings had occurred prior to the effective dates of the statutes. In the present case the obtaining of the benefit conferred by the statute is not so conditioned but depends solely on the existence of a status of probationary employee, and petitioner's status as a probationary teacher continued after the effective date of the statute." (61 Cal.2d at p. 90.) Based on that analysis the court concluded the teacher was entitled to a hearing before the board could terminate her employment. (*Ibid.*)

Homeowners attempt to distinguish these decisions by claiming the tentative map did not confer any entitlement because extensions were dependent upon the City's approval. That would be true of discretionary extensions pursuant to section 66452.6, subdivision (e). However in this case we are concerned not with discretionary approvals, but with an amendment mandating automatic extensions of tentative maps, conditioned only upon future acts of the developer, namely the filing of phased final maps. Consequently, homeowners' attempts to distinguish the Supreme Court decisions in *Douglas Aircraft Co.*, *Sitzman*, and *Eichelberger* on this basis are unavailing.

Homeowners also suggest the laws in effect at the time of initial approval of a tentative map must control all further actions taken with respect to that tentative map despite changes in the laws. In support of their position homeowners cite *Youngblood* v. *Board of Supervisors* (1978) 22 Cal.3d 644

[150 Cal.Rptr. 242, 586 P.2d 556]. In that case the Supreme Court noted there had been some ambiguity whether approval of a final map was contingent on whether it was in conformity with the general plan in effect at the time the tentative map was approved or the general plan, if different, in effect at the time approval of a final map was sought. In the interim the Legislature clarified its intent and expressly provided approval of a tentative map may not be denied if it is in substantial compliance with the previously approved tentative map. (Bus. & Prof. Code, § 11549.6.) Consequently the court concluded the board had not abused its discretion in approving the developer's final map although it conflicted with the general plan then in effect. (22 Cal.3d at pp. 653-657.)

The decision in *Youngblood* is distinguishable. This case does not involve principles of equity and whether a local governmental entity may invoke its discretionary power to change conditions of approval after a developer has relied on approval of a tentative map and after having expended substantial sums to comply with the conditions of that approval. (See also *El Patio* v. *Permanent Rent Control Bd.* (1980) 110 Cal.App.3d 915 [168 Cal.Rptr. 276] [government body may not impose additional requirements when granting discretionary extensions of a tentative map].) Moreover, in this case there is no express mandate from the Legislature requiring laws in effect at the time of approval of a tentative map to control the future life of that map.

As noted, the tentative map involved in this case had not yet expired but had continuing validity and Fox had a continuing entitlement to develop at the time the amendment which authorized automatic extensions for up to 10 years became effective. As a result, we conclude the 1985 amendment could properly apply to govern future actions regarding the life of the tentative map. Because such effect would operate only in the future, the 1985 amendment had only prospective effect in this case and did not violate the general rule against retroactive application of statutes. As a result, Fox was entitled to the benefit of the 1985 amendment authorizing mandatory three-year extensions for a maximum of ten years upon the filing and acceptance of phased final maps.

II. *The Automatic 36-month Extension Which Extended the Life of the Tentative Map Into the 12th Year Was Not Prohibited by the Statutory Language of Subdivision (a) of Section 66452.6.*

We have determined the 1985 amendment allowing up to 10 years of mandatory extensions applies to the tentative map at issue in this case. We must next determine whether the trial court erred in accepting the City's and

Fox's statutory interpretation of section 66452.6 permitting a mandatory extension to extend the life of a tentative map beyond its 10-year anniversary date. ■ Where the issue on appeal involves a pure question of law, the issue is subject to independent, de novo review. (*Estate of Coate* (1979) 98 Cal.App.3d 982 [159 Cal.Rptr. 794]; *Goddard v. South Bay Union High School District* (1978) 79 Cal.App.3d 98 [144 Cal.Rptr. 701].) An appellate court may independently examine the legal issues in the case and is not bound by the ruling of the trial court. (*Twaine Harte Homeowners Assn. v. County of Tuolumne* (1982) 138 Cal.App.3d 664, 674 [188 Cal.Rptr. 233].)

Homeowners contend the plain language of section 66452.6, subdivision (a) makes clear mandatory extensions granted pursuant to that subdivision "shall not extend the tentative map more than 10 years from its approval or conditional approval." Consequently, homeowners argue the extension granted in 1992 was unlawful because it was an automatic rather than a discretionary extension which extended the life of the tentative map into its 12th year. They contend the clarifying amendment to the discretionary extension subdivision did not alter the meaning of subdivision (a)'s measuring point for the maximum limit of mandatory extensions. They contend any other interpretation would have the effect of repealing by implication subdivision (a)'s express 10-year limit on mandatory extensions. In their view a tentative map could have a possible life of up to 13 years but only if the first 10 years of a map's life are the result of mandatory extensions pursuant to subdivision (a) and the final 3 years are pursuant to the City's discretionary authority pursuant to subdivision (e).

Fox and the City argue the proper interpretation of the interrelationship of the 2 subdivisions is that the Legislature has approved an overall life for a tentative map of 13 years provided no more than 10 years of a tentative map's life are as a result of mandatory extensions.

This case poses an unusually close and difficult question of statutory interpretation. This issue assumes special importance because its resolution will not only affect situations such as this where both the approving authority and the developer support an extension, but also situations where the approving authority opposes further extensions beyond the 10-year limit for the recordation of a final map.

■ "Our analysis starts from the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] In determining intent, we look first to the language of the statute, giving effect to its 'plain meaning'. [Citation.]" (*Kimmel v. Goland* (1990)

51 Cal.3d 202, 208-209 [271 Cal.Rptr. 191, 793 P.2d 524].) "If the words, given their ordinary and popular meaning, are reasonably free from uncertainty there is no need for construction, and we may not indulge in it." (*Comite de Padres de Familia* v. *Honig* (1987) 192 Cal.App.3d 528, 532 [237 Cal.Rptr. 517].) However, when the proper interrelationship between statutory provisions is ambiguous, the court may resort to extrinsic aids to clarify the Legislature's intent. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) Extrinsic evidence is not controlling, however, because legislative intent in the last analysis must be derived from the language of the statute. (See *Fay* v. *District Court of Appeal* (1927) 200 Cal. 522, 537 [254 P. 896].)

■ A review of the statutory language and the history of these amendments indicates a tentative map may have a life of up to 13 years whether or not the final 3 years of the map's life was extended pursuant to the local agency's discretionary authority.

Prior to 1986 the maximum life of a tentative map was six years, an initial period of three years plus up to three years if the local agency approved the extension. Effective in 1986, section 66452.6, subdivision (a) was amended to provide for an automatic 36-month extension upon the filing of a phased final map by a developer required to expend more than $100,000 on off site improvements as a condition of approval of a tentative map. This language standing alone could have provided for mandatory extensions of nearly unlimited amounts of time for those projects providing for the filing of multiple phased final maps. For example, in the present case the tentative tract map allowed 15 phased final maps for the residential portions and 4 phased final maps for the commercial portions of the tract. Assuming Fox could have requested extensions of 36 months upon the filing of each of those 19 phased final maps, in the absence of restricting language in the amendment, the tentative map could have had a life of up to 57 years based on mandatory extensions alone, all without the oversight, input or concurrence of the City.

The Legislature no doubt envisioned this possibility and added language to the amendment stating "[t]he extensions shall not extend the tentative map more than 10 years from its approval or conditional approval." (§ 66452.6, subd. (a).) The gist of this language suggests the Legislature wanted to put a cap on mandatory extensions over which the local agency has no discretion. The interpretation, that the 10-year period referred to in the statute refers to 10 years of automatic extensions, is adopted in a noted treatise on real property and land use. "When the subdivider is required to construct or

improve public improvements of $100,000 or more outside the boundaries of the tentative map, such as traffic controls, streets, roads, highways, freeways, bridges, overcrossings, interchanges, flood or storm control facilities, or sewer, water, and lighting facilities, the term of the approved or conditionally approved map is extended for thirty-six months from the date of its expiration, or from the date of the filing of a final map for any portion of the area of the tentative map. *Such extensions* shall not exceed ten years from the date the tentative map was approved or conditionally approved." (7 Miller & Starr, Current Law of Cal. Real Estate (2d ed. 1990) Subdivisions, § 20:125, p. 358, italics added.)

After the amendment's 1986 effective date all parties involved in this case, as well as apparently many other interested persons and entities and local governments, believed the life of a tentative map could not exceed 10 years whether interim extensions were mandatory or discretionary.[8] In 1991 the Legislature amended subdivision (e) of section 66452.6 to clarify discretionary extensions of time for a period or periods up to three years "shall be in addition to the period of time provided by subdivision (a) [regarding automatic extensions]."

The Legislative Counsel's Digest which explains the 1991 amendment states:

"Existing law provides that upon application of the subdivider filed prior to the expiration of the approved or conditionally approved tentative map, the time at which the map expires may be extended by the legislative body or by an advisory agency authorized to approve or conditionally approve tentative maps for a period or periods not exceeding a total of 3 years.

"This bill would specify that this period of extension is in addition to any other period of time as provided." (Stats. 1991, ch. 907.)

In an analysis prepared for the Senate Housing and Urban Affairs Committee and the Senate Rules Committee, the Office of Senate Floor Analyses stated the proposed law: "Clarifies that the up to three years extension period for a tentative map which may be approved by the legislative body or advisory agency, *does not include* the time period of a development moratorium and *is in addition to* the initial 2-3 year life of a map and any extensions

---

[8]For example, under sections 16.05C, 17.07 and 16.05D(2)(d) of the Los Angeles Municipal Code, tentative maps under 10 years old are exempt from requirements of site review, public hearings and environmental impact reports. However, under existing law, implementation of local ordinances in any manner inconsistent with current state statutes would be improper. (*Griffis* v. *County of Mono, supra,* 163 Cal.App.3d 414.)

of up to 10 years caused by the filing of multiple final maps. . . ." (Italics in original.)

Thus, the language of the statute plus the history of the 1991 amendment indicates the Legislature authorized a life of up to 13 years based on no more than 10 years of mandatory extensions and a maximum of 3 years of discretionary extensions. This reading of the statute gives meaning to the statutory provisions at issue in this case in a manner which gives effect to both. (*Wells* v. *Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 788 [176 Cal.Rptr. 104, 632 P.2d 217] [statute should be construed so as to harmonize its various parts within the legislative purpose of the statute as a whole].)

Homeowners do not disagree the Legislature authorized the life of a tentative map to be as much as 13 years but argue any extension after a map's 10-year anniversary date must be pursuant to the local agency's discretionary authority. In support of their argument homeowners point to an excerpt from Miller and Starr's treatise, Current Law of California Real Estate, written before the 1991 amendment, which states: "In addition to the extensions that may be available as described above, prior to the expiration of the map, the subdivider may apply for a *further extension*, and the period can be extended for a period or periods not to exceed a total of three years." (7 Miller & Starr, Current Law of Cal. Real Estate, *supra*, Subdivisions, § 20:125, p. 359, italics added.) Homeowners also refer to a report prepared by the Assembly Committee on Local Government, chaired by the author of the amendment which states the amendment "makes clear that the discretionary 3-year extension is in addition to the *initial period* of validity under subdivision (a)." (Italics added.)

In our view, these references to "further extensions" and "initial period" are not sufficient to support an interpretation of the amendment which would strictly limit extensions beyond 10 years to solely those of the discretionary variety. The use of these phrases may well refer to the more common situation in which a developer is not required to expend large sums on off site public works or is not allowed to file phased final maps and therefore is not entitled to mandatory 36-month extensions in any event. (See, e.g., Curtin et al., Cal. Subdivision Map Act Practice (Cont.Ed.Bar Supp. 1993) § 4.13, p. 28.)

Moreover, neither the history of the amendment nor its language purports to direct the order in which mandatory or discretionary extensions must be used to benefit from the maximum 13 years the Legislature authorized. Homeowners would read the statute as meaning the life of a tentative map

may be as long as 13 years provided a developer has not already exhausted 3 years' worth of discretionary extensions, in which case that developer's tentative map would have a maximum life of 10 years. However, this interpretation does not find support in the language of the statute. If anything, the language of subdivision (e) directing any discretionary periods of extensions of up to three years could be "in addition to" any period of mandatory extensions evidences an intent to lengthen, not shorten the time period in which a developer may record a final map. From this perspective, the present tentative map whose extended life includes nine years of mandatory time plus three years of discretionary extensions does not violate the statute.

On the other hand, there are policy reasons, as homeowners point out, why it may be undesirable for a local approving agency to grant discretionary extensions at any time other than at the point mandatory extensions have been exhausted. If it has not granted any discretionary extensions during the 10-year period, the approving agency will be in a position to assess at the 10-year point whether it is desirable to extend the period another 3 years or less. The agency will be in a position to reassess whether substantial changes have occurred in the community in the interim and consequently whether a project may still be in the community's best interests. If the project is no longer compatible with the community's needs, the agency will have the discretion to disapprove any further extension beyond the 10-year limit of mandatory extensions. However if the agency lacks discretion, as in this case, to disapprove an extension to continue a tentative map's life into its 12th or 13th year because the 3-year discretionary extension was invoked early in the map's life, there would be no opportunity to reevaluate whether the project has since become obsolete or whether its present burdens outweigh its benefits. Should discretionary extensions be granted early in a tentative map's life, as in this case, a developer would then have an absolute right to extend the life of a tentative map to the full 13 years even if the local agency no longer considered the project to be beneficial in the ensuing years or where it considered changed conditions required a new site review and environmental impact report.

Therefore, although we hold a tentative map may be valid for a total of 13 years provided that life does not exceed an aggregate of mandatory extensions totalling 10 years or discretionary extensions exceeding 3 years, we recognize this interpretation may pose problems for local agencies and legislative bodies responsible for approving discretionary extensions during the first 10 years of a tentative map's life. Should the approving agency grant all or most of the three years' worth of discretionary extensions at any

time other than at the point the ten-year period would otherwise expire, a local agency will find itself powerless to deny a further extension of time equal to the earlier discretionary extension even though community and environmental conditions have changed, or even if the project at that point has questionable beneficial use.

While we recognize this is not a concern in the instant case because the City is supportive of a further extension of the Fox project, it does suggest the interpretation the City urged in this case and which this court adopts may diminish the City's control over the development process in other land-use situations.

Because we discern no violation of the legislative mandate in this case we affirm the judgment.

DISPOSITION

The judgment is affirmed. Each side to bear its costs of appeal.

Lillie, P. J., and Woods (Fred), J., concurred.