TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-406 |
| of | : | |
| | : | August 2, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE STEVE BALDWIN, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following questions:

1. May a charter school receive state funding for the operation of an independent study program?

2. May the charter of a school granted prior to June 30, 1993, be revoked if the school violates the state funding statute governing the operation of its independent study program?

3. May a charter school which claims state funding for students in its independent study program provide to such students special educational aids and materials not provided to students in its regular classes or in the regular classes of the district which has approved its charter?

CONCLUSIONS

1. A charter school may, subject to the terms of Education Code section 51747.3, receive state funding for the operation of an independent study program.

2. The charter of a school granted prior to June 30, 1993, may be revoked if the school violates the state funding statute governing the operation of its independent study program.

3.  A charter school which claims state funding for students in its independent study program may provide to such students special educational aids and materials not provided to students in its regular classes or in the regular classes of the district which has approved its charter.

ANALYSIS

The three questions presented for resolution concern the relationship between two statutory schemes.  One deals with the operation of charter schools and is known as the Charter Schools Act of 1992 (Ed. Code, §§ 47600-47616; "Act").[1]  The other deals with the offering of an "independent study" program (§§ 51745-51749.5).  May a charter school receive state funding for the operation of an independent study program, and if so, what restrictions apply?  If the restrictions are not followed in operating the program, may the school's charter be revoked?

1.  Charter Schools Offering Independent Study Programs

The first question posed is whether a charter school may receive state funding for the operation of an independent study program.   We conclude that it may.

The purposes of the Act in authorizing the operation of charter schools are set forth in section 47601 as follows:

"It is the intent of the Legislature, in enacting this part, to provide opportunities for teachers, parents, pupils, and community members to establish and  maintain schools that operate independently from the existing school district structure, as a method to accomplish all of the following:

"(a)  Improve pupil learning.

"(b)  Increase learning opportunities for all pupils, with special emphasis on expanded learning experiences for pupils who are identified as academically low achieving.

"(c)  Encourage the use of different and innovative teaching methods.

"(d)   Create new professional opportunities for teachers, including the opportunity to be responsible for the learning program at the school site.

"(e)   Provide parents and pupils with expanded choices in the types of educational opportunities that are available within the public school system.

---

[1]Undesignated section references herein are to the Education Code.

"(f)   Hold the schools established under this part accountable for meeting measurable pupil outcomes, and provide the schools with a method to change from rule-based to performance-based accountability systems."

The establishment of a charter school is initiated by the circulation of a petition among the teachers of a school district and the petition's submission to the governing board of the district for review.  (§ 47605, subd. (a).)  After review and public hearing, the district board may grant or deny the charter.  (§ 47605, subd. (b).)

A charter school is required to be nonsectarian in its programs, admission policies, employment practices, and all other operations.  (§ 47605, subd. (d).)  Admission to a charter school may not be determined by the student's place of residence within the state, nor may any student enrolled in the school district be required to attend a charter school.  (§ 47605, subds. (d), (f).)  With respect to a charter school's general operations, section 47610 provides:

"A charter school shall comply with all the provisions set forth in its charter petition, but is otherwise exempt from the laws governing school districts except as specified in Section 47611."[2]

As for the state funding of charter schools, section 47612 provides in part:

"(a)   The Superintendent of Public Instruction shall make all of the following apportionments to each charter school for each fiscal year:

"(1)   From funds appropriated to Section A of the State School Fund for apportionment for that fiscal year pursuant to Article 2 (commencing with Section 42238) [revenue limits and apportionments for each school district], an amount for each unit of regular average daily attendance in the charter school that is equal to the current fiscal year base revenue limit for the school district to which the charter petition was submitted.

"(2)   For each pupil enrolled in the charter school who is entitled to special education services, the state and federal funds for special education services for that pupil that would have been apportioned for that pupil to the school district to which the charter petition was submitted."

Keeping in mind these statutory provisions governing charter schools, we turn to the Legislature's authorization of "independent study" programs.   Section 51745 provides:

"(a)   Commencing with the 1990-91 school year, the governing board of a school district . . . may offer independent study to meet the educational needs of pupils

---

[2]Section 47611 pertains to participation in the State Teacher's Retirement System.

in accordance with the requirements of this article. Educational opportunities offered through independent study may include, but shall not be limited to, the following:

"(1) Special assignments extending the content of regular courses of instruction.

"(2) Individualized study in a particular area of interest or in a subject not currently available in the regular school curriculum.

"(3) Individualized alternative education designed to teach the knowledge and skills of the core curriculum. Independent study shall not be provided as an alternative curriculum.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(e) No course included among the courses required for high school graduation . . . shall be offered exclusively through independent study."

Section 51747.5 states as follows:

"(a) The independent study by each pupil or student shall be coordinated, evaluated, and, notwithstanding subdivision (a) of Section 46300, shall be under the general supervision of an employee of the school district . . . who possesses a valid certification document pursuant to Section 44865, registered as required by law.

"(b) School districts . . . may claim apportionment credit for independent study only to the extent of the time value of pupil or student work products, as personally judged in each instance by a certificated teacher."

Section 46300, referenced in section 51747.5, specifies the method of computing average daily attendance for purposes of state funding:

"(a) In computing average daily attendance of a school district . . . there shall be included the attendance of pupils while engaged in educational activities required of those pupils and under the immediate supervision and control of an employee of the district . . . who possessed a valid certification document, registered as required by law.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(e) In computing the average daily attendance of a school district, there shall also be included the attendance of pupils participating in independent study. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."[3]

---

[3]However, a school district is not eligible to receive apportionments for independent study by pupils unless it has adopted

The focus of all three questions to be resolved is upon the terms and conditions of section 51747.3. In 1993 the Legislature added section 51747.3 (Stats. 1993, ch. 66, § 32) effective June 30, 1993, to provide as follows:

> "(a) No local education agency may claim state funding for the independent study of a pupil, whether characterized as home study or otherwise, if the agency has provided any funds or other thing of value to the pupil or his or her parent or guardian that the agency does not provide to students who attend regular classes or to their parents or guardians.

> "(b) Notwithstanding any other provision of law, . . . independent study average daily attendance shall be claimed by school districts . . . only for pupils who are residents of the county in which the apportionment claim is reported, or who are the residents of a county immediately adjacent to the county in which the apportionment claim is reported.

> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> "(d) In conformity with Provisions 25 and 28 of Section 2.00 of the Budget Act of 1992, this section is applicable to average daily attendance reported for apportionment purposes beginning July 1, 1992. The provisions of this section are not subject to waiver by the State Board of Education, by the State Superintendent of Public Instruction, or under any provision of Part 26.8 (commencing with Section 47600 [pertaining to charter schools])."[4]

We have examined in detail the provisions of the Act governing charter schools and the statutory scheme authorizing independent study programs. Nothing in either legislative scheme or in any other part of the Education Code would preclude a charter school from offering an independent study program. Indeed, the two schemes are tied together in section 51747.3, subdivision (d), prohibiting the waiver of certain state funding requirements in operating an independent study program by charter schools.

As previously noted, the operation of a charter school is generally exempt from the laws governing school districts. (§ 47610.) On the other hand, section 51747.3, subdivision (d), provides that the state funding requirements of section 51747.3 "are not subject to waiver . . . under any

---

written policies as provided in section 51747.

[4]Section 46300.6 was added at the same time as section 51747.5 (Stats. 1993, ch. 66, § 28) to provide as follows:

> "The State Department of Education shall not apportion funds to a local education agency for a pupil in the independent study program if that agency has provided any funds or other things of value to the pupil or his or her parent or guardian that the agency does not provide to pupils who attend regular classes or to their parents or guardians."

provision of [the Act]" governing charter schools. Whatever may comprise the "laws governing school districts" from which charter schools are exempt, it is clear that for purposes of the state funding of independent study programs, a charter school must comply with the particular requirements of section 51747.3. The last sentence of subdivision (d) of section 51747.3 would otherwise be devoid of meaning, contrary to the rule of statutory construction that every word, phrase, sentence, and part of a statute must be accorded significance if reasonably possible. (*Moyer* v. *Workmen's Comp. App. Bd.* (1993) 10 Cal.3d 220, 230; 78 Ops.Cal.Atty.Gen. 65, 70 (1995).)

In answer to the first question, therefore, we conclude that subject to the terms of section 51747.3, a charter school may receive state funding for the operation of an independent study program.

2. Revoking a School's Charter

The second question concerns the authority of a school district to revoke a school's charter for violating the terms of section 51747.3 in conducting its independent study program. We conclude that a district board has the authority to revoke a school's charter for a violation of section 51747.3.

Section 47607, subdivision (b) provides:

"A charter may be revoked by the authority that granted the charter under this chapter if the authority finds that the charter school did any of the following:

"(1) Committed a material violation of any of the conditions, standards, or procedures set forth in the charter petition.

"(2) Failed to meet or pursue any of the pupil outcomes identified in the charter petition.

"(3) Failed to meet generally accepted accounting standards of fiscal management.

"(4) Violated any provision of law."

Section 51747.3 is a "provision of law." It became effective on June 30, 1993, and applies prospectively to charter schools as well as traditional schools.[5] No legislative intent may be found to

---

[5]A retrospective law is one that relates back to a previous transaction and gives it a different legal effect from that which it had under the law when it occurred. (*Bear Valley Mut. Wat. Co. v. County of San Bernardino* (1966) 242 Cal.App.2d 68, 72; 60 Ops.Cal.Atty.Gen. 197, 202 (1977).) We are not asked to consider the effect that section 51747.3 might have upon a claim for state funds made prior to its enactment. Hence, we do not consider whether that section may be so applied. Generally, however, no constitutional objection exists to the retroactive operation of a civil statute in the absence of any impairment of a vested right or obligation of contract. (*Gordon H. Ball, Inc.* v. *State of California ex rel. Dept. Pub. Wks.* (1972) 26 Cal.App.3d 162, 168; 65 Ops.Cal.Atty.Gen. 66, 69, fn. 4 (1982).)

exempt schools which were chartered prior to its enactment, or to limit the application of subdivision (b)(4) of section 47607 to those laws which were in effect when a school's charter was first granted. As previously discussed, a school's charter is a creature of statute. (§ 47605.) Authority created by statute may be modified by statute. (*Emery* v. *United States* (9th Cir. 1951) 186 F.2d 900, 901-903, cert. den. 341 U.S. 925.) Generally, one legislature may not enact irrepealable legislation or limit or restrict its own power or the power of its successors as to the repeal or modification of statutes. (*United Milk Producers* v. *Cecil* (1941) 47 Cal.App.2d 758, 764-765; 66 Ops.Cal.Atty.Gen. 418, 423 (1983).) Hence it is immaterial for purposes of a violation of section 51747.3 that a school's charter was granted prior to the statute's enactment.

In answer to the second question, therefore, we conclude that the charter of a school granted prior to June 30, 1993, may be revoked if the school violates the terms of section 51747.3 governing the state funding of its independent study program.

3. Providing Educational Materials.

The final inquiry is whether a charter school which claims state funding for students in its independent study program may provide to such students special educational aids and materials not provided to students in its regular classes or in the regular classes of the district approving its charter. As set forth above, subdivision (a) of section 51747.3 provides that a "local educational agency"[6] may not claim state funding for the independent study of a student, if the agency has provided "any funds or other thing of value to the pupil or his or her parent or guardian that the agency does not provide to students who attend regular classes or to their parents or guardians." The issue arises whether educational materials, such as laptop computers and similar learning aids, are "thing[s] of value" for purposes of section 51747.3.

As previously quoted, the Legislature's goals for a school's independent study program are, among others, to provide "[s]pecial assignments extending the content of regular courses of instruction," "[i]ndividualized study in a particular area of interest or in a subject not currently available in the regular school curriculum," and "[i]ndividualized alternative education designed to teach the knowledge and skills of the core curriculum." (§ 51745, subd. (a)(1), (2), (3).)

It would be absurd to suggest that the educational settings of a regular classroom and of an independent study program provide identical learning opportunities. The resources of the one are inherently different from the other. Section 57147.3 may not be construed as limiting the educational resources of an independent study program expressly intended by the Legislature to provide "assignments extending the content of regular courses of instruction" in subjects "not currently available in the regular school curriculum." (§ 51745.)

"The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Dyna-Med, Inc.* v. *Fair*

---

[6]In this context, the "local educational agency" would be the charter school. (See §§ 46300, 47612.)

*Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)   Statutes are not to be interpreted so as to "`"result in absurd consequences which the Legislature did not intend."'"   (*Whitman* v. *Superior Court* (1991) 54 Cal.3d 1063, 1072.)   "[I]t is presumed the Legislature intended reasonable results consistent with its expressed purpose, not absurd consequences.   [Citations.]" (*Harris* v. *Capitol Growth Investors XIV* (1991) 52 Cal.3d 1142, 1165-1166.)

In view of the public policies contained in section 51745 regarding expanded choices in the types of available educational opportunities provided by independent study programs, had the Legislature intended instead to preclude the furnishing of special educational materials to students enrolled in an independent study program, we believe that it would have expressly included educational materials within the purview of "other thing of value" in section 51747.3.  (Cf. 75 Ops.Cal.Atty.Gen. 256, 260 (1992); 74 Ops.Cal.Atty.Gen. 122, 126 (1991); 70 Ops.Cal.Atty.Gen. 75, 80 (1987).)

We have examined the legislative history of section 51747.3's recent enactment. (Stats. 1993, ch. 66, § 32.)   Nothing therein would suggest that educational resources are to be withheld from students in an independent study program under the circumstances presented.  Rather, the language of section 51747.3, subdivision (a), was adopted to prevent schools from offering "sign up bonuses" to the parents of home study children in order for the schools to obtain state funding for the attendance of the children in their independent study programs.   The prohibition was intended to prevent schools from offering incentives unrelated to education, not to preclude schools from spending funds on special educational aids and materials for independent study students.

In answer to the third question, therefore, we conclude that a charter school which claims state funding for pupils in its independent study program may provide to such students special educational aids and materials not provided to students in its regular classes or in the regular classes of the district which has approved its charter.

* * * * *